McGINNIS, APPELLANT, *v.* KINKAID ET AL., APPELLEES.

(No. 42318—Decided January 15, 1981.)

*Mr. John S. Thomay,* for appellant.
*Hesser, Armstrong, Toomey & Disantis Co., L.P.A., Mr. John D. Campbell, Messrs. Kreiner, Uhlinger & Lewis* and *Mr. Cullan J. Uhlinger,* for appellees.

JACKSON, P.J. This is an appeal from a decision of the Court of Common Pleas

of Cuyahoga County granting defendants' motion for summary judgment against plaintiff in a civil action for damages arising out of an incident involving the discharge of a loaded firearm.

The facts pertinent to disposition of this appeal are summarized as follows.

On July 11, 1976, defendant Russell Kinkaid purchased a used twelve-gauge shotgun for $25, making the gun a birthday present to himself on his seventeenth birthday. When defendant brought the gun home, his mother, defendant Mary Kinkaid, indicated to him that she was opposed to his having the gun. Nevertheless, Russell Kinkaid kept the shotgun.

On or about July 18, 1976, plaintiff Daniel McGinnis, his wife and his two young children came to Cleveland, Ohio, from Whitesville, West Virginia, to visit plaintiff's mother-in-law, Anna Holcomb, and her friend, Flim Sanson. At the time of the visit plaintiff was on a two-week vacation leave from his job in a West Virginia mine.

At approximately 9:00 p.m. on July 20, 1976, defendant Russell Kinkaid went drinking with a couple of his friends. In the course of the next two and one-half hours Russell Kinkaid consumed approximately one gallon of wine.[1]

At approximately 11:45 p.m. on July 20, 1976, plaintiff's oldest child indicated to him that she wanted some bananas, and plaintiff and Mr. Sanson decided to drive from Ms. Holcomb's home to a nearby grocery store to purchase the bananas. As he was leaving for the store with his daughter, plaintiff was met at his automobile by defendant Russell Kinkaid.

As defendant approached plaintiff, defendant demanded that plaintiff give him a pack of cigarettes. When plaintiff indicated to defendant that he would not give defendant a whole pack of cigarettes, defendant uttered a profanity and pro-ceeded to enter and search Ms. Holcomb's home in quest of cigarettes. Mr. Sanson ran into the house after defendant and pulled defendant back out into the front yard. Once back in the front yard, a short exchange between defendant and Sanson led to a fight between them. Plaintiff immediately took his daughter inside the house, and then returned to the front yard.

While sitting in a parked car a short distance away, Robert Price, an acquaintance of the defendant, observed that defendant had become involved in a fight. Price immediately jumped out of the car with two tire irons, ran to defendant, and tossed one of the tire irons to him. As Price ran by, Sanson tripped him to the ground. After Sanson tripped Price, plaintiff held Price down and told him to stay out of the fight between defendant and Sanson. For the duration of the fight plaintiff stayed with Price.

Approximately eight minutes after the fight began, it ended, and defendant and Price got into an automobile and drove away. As the vehicle sped away, one of the vehicle's occupants yelled to Sanson and plaintiff, "I'll be back to get you." With this, plaintiff and Sanson went back into the house to examine and care for Sanson's injuries.

As soon as defendant got back into the car to leave the scene of the fight, he instructed Price to take him home so that he could get his shotgun. When defendant arrived home, he went inside to get his shotgun while Price waited. When defendant returned to the car with the shotgun, Price drove him back to the scene of the fight. Upon arrival on Holmes Avenue, defendant fired a shotgun blast through the window of the gas station next door to Ms. Holcomb's home. When plaintiff's wife noticed and recognized the car parked in front of the house, she called it

---

[1] The wine was obtained from a third party who purchased the wine for defendant Russell Kinkaid and his friends from a nearby delicatessen.

to plaintiff's attention. As plaintiff approached the front screen door of the house to look out, he was struck in the head by a shotgun blast that came through the screen. The gun was fired by defendant Russell Kinkaid.

As a consequence of the injury inflicted by the gunshot, plaintiff suffered a permanent loss of vision in his right eye, decreased vision in his left eye, a decrease of hearing in his right ear, a loss of his sense of balance due to damage inflicted in his inner ear, infected jaws, teeth and sinuses from the lodgment of shotgun pellets in his head, lodgment of pellets in his neck and his shoulder, and facial disfigurement. This injury caused plaintiff a loss of income and caused him to incur extensive medical bills for treatment of the injury.

On July 19, 1978, plaintiff commenced this action by filing a complaint in the Court of Common Pleas of Cuyahoga County. The complaint designated Kinkaid and his parents, Harold and Mary Kinkaid, as defendants, and charged that Russell Kinkaid wantonly, recklessly and negligently inflicted the gunshot wound, that his parents were responsible for the injury, and that Russell Kinkaid was under their exclusive "custody and control" at the time of the shooting. Plaintiff claimed damages of $220,000, plus interest and costs.

On December 14, 1978, defendants jointly answered the complaint and asserted that plaintiff had failed to state a claim against defendants and that plaintiff's cause of action against defendants was barred by the applicable statute of limitations.

On January 29, 1980, the trial court scheduled a pretrial conference for February 19, 1980. Without first obtaining leave of court, defendants filed a motion for summary judgment on February 25, 1980. The motion for summary judgment asserted that Russell Kinkaid's shooting of plaintiff was an intentional tort, that the statute of limitations for an action based on an assault and battery had elapsed prior to commencement of the suit, and that plaintiff had failed to state a cause of action against Harold and Mary Kinkaid. Although the motion for summary judgment was not supported by affidavit, defendants attached to the motion photostatic copies of two oral depositions which were not accompanied by proof of their authenticity, apart from a photostatic copy of the certification of a notary public. The photostatic copy of the notary's certification was not accompanied by proof of its authenticity.

On April 4, 1980, plaintiff filed a brief in opposition to the motion for summary judgment. Although the brief in opposition to the motion was not supported by affidavit, plaintiff attached to the brief photostatic copies of part of an oral deposition which bore neither the certification of the officer before whom the deposition was taken nor proof of authenticity. Neither the plaintiff nor the defendants moved to strike their opponent's documentary evidence from the file.

On April 8, 1980, defendants' motion for summary judgment was granted by the trial court; and, on May 7, 1980, plaintiff filed a timely notice of appeal from the decision.

The plaintiff-appellant, Daniel R. McGinnis, assigns two errors:

*Assignment of Error No. 1:*

"The trial court erred in finding as a matter of law defendant-appellee's act was one of assault and battery rather than negligence."

*Assignment of Error No. 2:*

"The trial court erred in finding that parental liability can never exist for tortious conduct of one's children."

Civ. R. 56, which governs the granting of summary judgment, provides in pertinent part:

"(B) A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may at

any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof. If the action has been set for pretrial or trial, a motion for summary judgment may be made only with leave of court.

"(C) ***Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.***"

In order for plaintiff to prevail on appeal, the record must demonstrate either that there existed a genuine issue of material fact between the plaintiff and the defendants, or that the defendants were not entitled to judgment as a matter of law. We find that the materials submitted in support of and in opposition to the motion for summary judgment[2] in the case at bar fail to present a genuine issue of material fact between the plaintiff and any of the defendants. As a consequence, the sole inquiry becomes whether the defendants were entitled to judgment against the plaintiff as a matter of law.

In determining whether a movant is entitled to judgment as a matter of law under Civ. R. 56(C), the court must view the evidence in a light most favorable to the party opposing the motion for summary judgment, and must resolve all competing inferences which might reasonably be drawn from the facts in favor of the party opposing the motion. It is only when reasonable minds could but conclude that the movant is entitled to judgment as a matter of law that a trial court may enter summary judgment in favor of the movant.

With regard to the claim asserted by plaintiff against defendant Russell Kinkaid, we are persuaded from the evidence that reasonable minds could only conclude that the defendant Russell Kinkaid was entitled to judgment as a matter of law.

In support of the first assignment of error, plaintiff contends that Russell Kinkaid was too drunk to have intended the harmful contact. Plaintiff further contends that as a consequence of his inebriation, Russell Kinkaid was merely negligent in discharging the firearm. The record fails to support either of these contentions.

In his deposition, Russell Kinkaid testified that he deliberately aimed the

---

[2] Failure to move to strike or otherwise object to documentary evidence submitted by an opponent in support of, or in opposition to, a motion for summary judgment waives any error committed by the trial court in considering that evidence under Civ. R. 56(C). See *Brown* v. *Insurance Co.* (1978), 63 Ohio App. 2d 87 [17 O.O. 3d 267].

Although it is clear from the record that the documentary evidence submitted by the defendants was not authenticated by independent proof in the record, and that the photostatic copies of the transcripts of the depositions did not bear the certification of the officer before whom the depositions were taken, the plaintiff failed to move to strike this documentary evidence from the file, and failed to otherwise object to such evidence. As a consequence, any error committed by the trial court in considering defendants' documentary evidence was waived.

shotgun at the head of the person standing in the doorway, and that he tried to hit that person in the head. Unrebutted, this testimony was sufficient to establish that he fired the shotgun with the intention to do serious bodily harm, and that his conduct amounted to a battery.

R.C. 2305.11, which establishes a one-year statute of limitations for the intentional tort of battery, provides in pertinent part:

"(A) *An action for* libel, slander, *assault, battery,* malicious prosecution, false imprisonment, or malpractice, including an action for malpractice against a physician, podiatrist, or a hospital, or upon a statute for a penalty or forfeiture, *shall be brought within one year after the cause thereof accrued,*\*\*\*." (Emphasis added.)

Because the record discloses that plaintiff's action was commenced approximately two years after the shooting occurred, the one-year statute of limitations applicable to the claim asserted against defendant Russell Kinkaid expired prior to the institution of the action.[3] As a consequence, reasonable minds could only

conclude that Russell Kinkaid was entitled to judgment against the plaintiff as a matter of law. The trial court properly granted Russell Kinkaid's motion for summary judgment.

With regard to the negligence claim asserted by plaintiff against the defendant-parents, Harold and Mary Kinkaid, although the record discloses no genuine issue of material fact, we are persuaded that the trial court did err in its determination that these defendants were entitled to judgment as a matter of law.[4] Therefore, the second assignment of error is well taken.

Although it is the general rule that a parent is not, by the mere fact of his paternity, liable for the independent torts of his minor child in absence of statutorily imposed liability, certain broadly defined exceptions have been recognized which impose liability on a parent for the torts of his child.

It is well established in Ohio, in cases not involving the use of an inherently dangerous instrumentality by a child, that the parent of a minor child may be held liable for the torts of the child where such

---

[3] Although the shooting occurred on July 20, 1976, this action was not commenced until July 19, 1978.

[4] Although R.C. 3109.10 establishes statutory parental liability for the assaults of their children, it is clear from the record that this action was instituted after the expiration of the statute of limitations applicable to a claim asserted under R.C. 3109.10.

R.C. 3109.10 provides:

"Any person is entitled to maintain an action to recover compensatory damages in a civil action, in an amount not to exceed two thousand dollars and costs of suit in a court of competent jurisdiction, from the parents having the custody and control of a minor under the age of eighteen years, who willfully and maliciously assaults such person by a means or force likely to produce great bodily harm. A finding of willful and malicious assault by such means or force is not dependent upon a prior finding of delinquency of the minor.

"*Such action shall be commenced and heard as in other civil actions for damages.*" (Emphasis added.)

In *Liddy* v. *Smole* (1978), 56 Ohio App. 2d 205 [10 O.O. 3d 203], the Court of Appeals for Shelby County held that a claimant seeking to impose parental liability under R.C. 3109.10 for an assault committed by a child must institute the action within the one-year statute of limitations applicable to assaults. See R.C. 2305.11.

In the instant case, because it is clear from the record that Russell Kinkaid committed an "assault," within the meaning of R.C. 3109.10, when he fired the shotgun, and because plaintiff failed to institute this action against defendants Harold and Mary Kinkaid within the one-year statute of limitations for assault and battery, plaintiff is barred from a statutory recovery from these defendants under R.C. 3109.10.

parent fails to exercise proper parental control over his child and the parent knew, or should have known from his knowledge of the habits or tendencies of the child, that the failure to exercise such control posed an unreasonable risk that the child would injure others. See *Cluthe* v. *Svendsen* (Superior Ct., 1885), 9 Ohio Decisions Reprint 458; *Lacker* v. *Ewald* (1901), 11 Ohio Decisions 337 (holding that, unless a parent is in some way connected with his child's wrongdoing, either actively or passively, such parent cannot be held liable for the independent torts of his child); *White* v. *Page* (1950), 61 Ohio Law Abs. ·498 (holding that, because a bow and arrow is not an inherently dangerous instrumentality in the hands of an 11-year-old child, a party must allege in his petition other facts sufficient to demonstrate that the child's parent is liable for an injury occasioned through such child's use of the bow and arrow); *Joseph* v. *Peterson* (1958), 108 Ohio App. 519 [9 O.O. 2d 498]; and *Taylor* v. *Webster* (1967), 12 Ohio St. 2d 53 [41 O.O. 2d 274], paragraph three of the syllabus (holding that, where a parent negligently permits his 10-year-old son to use a pellet gun, "***knowing that he has playmates and realizing that his possession of the gun may have injurious consequences, and a playmate takes and discharges the gun at***another playmate***damaging***[the playmate's] eye, the elements of proximate cause and reasonable foreseeability as they relate to***[the parent] are factual issues which may be resolved against the***" parent).

In other jurisdictions, a second exception to the general rule, that a parent is not liable for the independent torts of his child, is recognized where a parent entrusts his child with an inherently dangerous instrumentality which, because of the lack of age, judgment, or experience of the child, the parent knows, or should know, might become a source of danger to others.[5] Although it would appear that there is a paucity of Ohio case law involving parental liability for injuries inflicted by a child entrusted with an inherently dangerous instrumentality, at least one Ohio case has recognized that under appropriate circumstances parental liability might lie under a theory of negligent entrustment.[6]

After a general review of the case law on this issue, we are persuaded that where parents permit their inexperienced or irresponsible minor child to keep or have access to an inherently dangerous instrumentality, under circumstances which should put them on notice that the instrumentality might become a source of danger to others, reasonable minds could conclude that the parents were negligent in their acquiescence, and that they should be answerable in legal damages for an injury occasioned by the child's use of such instrumentality.

The record in the instant case indicates that both Harold and Mary Kinkaid were aware that Russell Kinkaid purchased the shotgun a week before Russell shot the plaintiff, and that Mary Kinkaid objected to Russell's possession of the firearm but acquiesced, subsequent-

---

[5] See *Reida* v. *Lund* (1971), 18 Cal. App. 3d 698, 96 Cal. Rptr. 102 (holding that, in an action against parents for injuries which resulted from the use of the father's rifle by their child, summary judgment in favor of the father was not properly granted where the evidence in the record raised a triable issue as to whether the father's action in leaving the rifle in a place accessible to the child constituted due care or negligent safeguard of a deadly weapon); *Gissen* v. *Goodwill* (Fla. 1955), 80 So. 2d 701; *Seabrook* v. *Taylor* (Fla. App. 1967), 199 So. 2d 315; and *Spector* v. *Neer* (Fla. App. 1972), 262 So. 2d 689; and *Giguere* v. *Rosselot* (1939), 110 Vt. 173, 3 A. 2d 538; and see Annotation 68 A.L.R. 2d 782; and Annotation 54 A.L.R. 3d 974.

[6] See *White* v. *Page* (1950), 61 Ohio Law Abs. 498.

ly, in his keeping the gun. Further, the record indicates that the father, defendant Harold Kinkaid, never objected to Russell's continued possession of the gun. Although the record indicates that Russell had in the past fired a shotgun, the evidence falls short of any indication that Russell was experienced in the use of firearms,[7] or that he had in the past demonstrated sound judgment in use of firearms. Further, the evidence discloses awareness by Harold and Mary Kinkaid that Russell had in the past demonstrated delinquent behavior.[8]

Construing the evidence presented in the instant case in a light most favorable to the plaintiff and resolving all competing inferences which might be drawn from the evidence in favor of the plaintiff, we are persuaded that, because a twelve-gauge shotgun is an inherently dangerous instrumentality in the hands of an inexperienced and irresponsible child, reasonable minds might conclude that Harold and Mary Kinkaid were negligent in permitting Russell Kinkaid to maintain possession of the firearm, and that they should have known that Russell's continued possession of the firearm might become a source of danger to others.

As we construe the pleadings and the evidence presented, we are persuaded that the trial court erred in its determination that reasonable minds could but conclude that the defendant-parents, Harold and Mary Kinkaid, were entitled to judgment against the plaintiff as a matter of law. We conclude that the trial court erred in granting a summary judgment against the plaintiff and in favor of these defendants.

---

[7] The record indicates that Russell Kinkaid had no permit to possess the shotgun and that Russell never received any formal training in the use of firearms.

[8] The record indicates that, on a prior occasion, Russell Kinkaid was found guilty of criminal trespass by a Juvenile Court, and that Russell was placed on six months' probation.

The judgment of the trial court is affirmed insofar as it gives judgment in favor of defendant Russell Kinkaid and against the plaintiff, and reversed insofar as it gives judgment in favor of defendants Harold and Mary Kinkaid and against the plaintiff. The cause is remanded to the trial court for further proceedings.

*Judgment accordingly.*

PRYATEL and CORRIGAN, JJ., concur.