BILICIC et al., Appellants,

v.

BRAKE et al., Appellees.

[Cite as *Bilicic v. Brake* (1989), 64 Ohio App.3d 304.]

Court of Appeals of Ohio,
Ashtabula County.

No. 89–A–1424.

Decided Sept. 18, 1989.

*Ralph C. Buss* and *Brett J. Plassard,* for appellants.

*William E. Riedel,* for appellee Jerry Nichols.

JOSEPH E. O'NEILL, Judge.

This cause originated in the trial court when the present appellants, Richard Bilicic and Myrna Bilicic, filed a complaint naming as defendants Scott A. Brake, Jeffrey J. Salviero, Edward R. Bauer, Barbara Schemkunas, individually and as parent of Edward R. Bauer, and Jerry Nichols. The complaint alleged that on July 12, 1987, Scott A. Brake, Jeffrey J. Salviero, and Edward R. Bauer, during the course of committing an armed robbery of a grocery store owned by Richard Bilicic, shot Richard Bilicic with a firearm owned by Jerry Nichols and that, as a result of this shooting, Richard Bilicic sustained bodily injury. We are concerned in this appeal only with the issue between the plaintiffs-appellants and defendant-appellee, Jerry Nichols. The complaint, previously mentioned, further alleged that the firearm, which was used in the robbery, had belonged to Jerry Nichols and was obtained from his household from his nine-year-old son, who had given it to Bauer, Salviero and Brake. The complaint went on to allege that Jerry Nichols had negligently maintained and stored the gun when he knew or should have known that his minor son would have access to it and could give it to someone and allow someone else to use it so that injury could occur.

The defendant-appellee, Jerry Nichols, answered the complaint essentially generally denying all the charges set forth therein and specifically setting

forth in his answer that the plaintiff-appellant's injuries and damages, if any, were the result of the actions and conduct of Brake, Salviero, and Bauer, over whom Jerry Nichols had no control or responsibility.

Subsequently, the appellee, Jerry Nichols, filed a motion for summary judgment with affidavit attached thereto. In his affidavit, Jerry Nichols admitted that he was the father of Adam Nichols and that he was the owner of the firearm used by Bauer, Brake and Salviero in the armed robbery and shooting of the plaintiff-appellant. The affidavit went on to state that, prior to events which gave rise to this lawsuit, the affiant had extensively instructed his minor son about the proper use of firearms and went on to state that Adam was thoroughly familiar with all firearms kept in the affiant's home. He further stated that Adam Nichols had successfully completed a Bowhunter Education Course. Additionally, the affidavit stated that all firearms owned by the affiant were, at all times, unloaded while in his home. He further stated that he was acquainted with Bauer, who was frequently a visitor in his home and who frequently hunted with him and his children, and went on to state that he had no knowledge of Bauer's propensity to commit any crime or to use any firearm in such a way as to cause an unreasonable risk of harm to others. There was also attached to the motion for summary judgment the affidavit of the appellee's son, Adam Nichols. In his affidavit, Adam Nichols stated that he had received extensive instruction from his father regarding the proper use of firearms. He went on to state that on July 12, 1987, he had loaned a .22 caliber Luger pistol, owned by his father, to Edward Bauer for the purpose of killing a trapped fox. Adam stated that he was well acquainted with Bauer and that he considered him to be responsible and experienced in the use of firearms and, further, that he had had no prior knowledge of Edward Bauer's propensity to commit any crime or use any firearm in a negligent manner.

The trial court sustained the motion for summary judgment and found that there was no just reason for a delay.

The appellant raises one assignment of error which reads that the trial court erred to the prejudice of the plaintiffs-appellants by improperly granting summary judgment as to a party-defendant when a genuine issue of a material fact was present and where the moving party was not entitled to judgment as a matter of law.

As we approach this assignment of error, we should correct some misstatements set forth therein. In their brief, the appellants state:

"Ohio has a statute which prohibits improperly furnishing firearms to minors (R.C. 2923.21)."

R.C. 2923.21 does not apply to firearms but rather by its specific wording applies to "any dangerous ordnance." "Dangerous ordnance," by way of definition contained in R.C. 2923.11, does not include a firearm such as the one which is the basis for this case. The appellants go on to state that:

"Ohio also has a statute requiring owners and possessers [*sic*] of dangerous ordinances [*sic*] to take specific precautions to insure that said weapons do not fall into the hands of juveniles (R.C. 2923.19)."

R.C. 2923.21 does not contain dangerous ordnance as its subject but rather firearms and handguns and, among other things, specifically states:

"(A) No person shall:

" * * *

"(3) Furnish any firearm to a person under age eighteen, except for purposes of lawful hunting, or for purposes of instruction in firearms safety, care, handling, or marksmanship under the supervision or control of a responsible adult."

█ It is obvious from all of the evidence which appears in the record that between the loan of the gun and the injury suffered by the appellant there had intervened a willful, malicious and criminal act of the three robber-assailants of the appellant.

"The general rule is that when, between negligence and the occurrence of an injury, there intervenes a willful, malicious, and criminal act of a third person which causes the injury but was not intended by the negligent person and could not have been foreseen by him, the causal chain between the negligence and the accident is broken." 70 Ohio Jurisprudence 3d (1986) 122, Negligence, Section 51.

The Ohio Supreme Court, in the case of *First Natl. Bank of Barnesville v. Western Union Tel. Co.* (1876), 30 Ohio St. 555, was the substance for the foregoing citation and, in that case, the Supreme Court reasoned that, under such a set of circumstances, the originally alleged act of negligence would only be " ' * * * the remote or removed cause of the injury, and not the *proxima*, or nearest cause.' " *Id.* at 567.

We must, however, give heed to further conditions which apply to such intervening acts. It is specifically stated that, if such a defense is to apply, then the intervening willful, malicious and criminal act was not intended by the negligent person.

We have reviewed all of the evidentiary matters which were before the trial court and we do not find any allegation nor any evidence that the defendant-appellee, Jerry Nichols, intended to be a part of the assault and robbery of the defendant-appellant, Richard Bilicic.

It is further provided that, if such defense is to apply, there must be established the fact that Jerry Nichols, the defendant-appellee, could not have foreseen the criminal act on the part of his three co-defendants. Jerry Nichols was well acquainted with Edward Bauer. Bauer had been a frequent visitor in his home. At different times, Bauer had hunted and trapped on Nichols' property and had on occasion, with Nichols' permission, used some of Nichols' firearms. Nichols further had knowledge that Bauer, three years prior to the incident involved herein, had, with his older brother, broken into a retail store. It was Nichols' opinion that Bauer was merely following his older brother's actions when the break-in occurred. Nichols had, for a prolonged period of time, instructed his son, Adam, as to the use of firearms and, as a part of that instruction, had instructed him that he was never allowed to take any of the firearms, stored in the home, out by himself. Nichols was further aware that Bauer had attended and completed a Bowhunter safety education course, a course involving twelve hours of instruction. Nichols was further of the opinion that, based upon his acquaintance and observation of Bauer, Bauer would not do anything illegal with the firearms stored in the Nichols home.

There was absolutely no evidence before the trial court that Nichols had any reason to foresee that his minor son might loan a firearm to Bauer.

The appellant obviously infers and argues that, in view of Bauer's prior involvement in the break-in of a retail store, the appellee should have foreseen the possibility of criminal activity on the part of Bauer. There was no evidence that Nichols had any knowledge or awareness that Bauer, at any time, mishandled a firearm. In fact, to the contrary as has been stated before, Nichols was aware that Bauer had taken a safe hunter's course.

"In delimiting the scope of duty to exercise care, regard must be had for the probability that injury may result from the act complained of. No one is bound to take care to prevent consequences, which, in the light of human experience, are beyond the range of probability. Only when the injured person comes within the circle of those to whom injury may reasonably be anticipated does the defendant owe him a duty of care. * * *.

"It is not necessary, however, that injury to the plaintiff, himself, be foreseeable. It is enough that the act in question may, in all human probability, produce harm to persons similarly situated. Nor is it necessary that the defendant, himself, actually anticipate or foresee the probability of injury to anyone. It is enough that the probability of injury to those in the plaintiff's general situation should have been perceived by a reasonably prudent and careful person." *Gedeon v. East Ohio Gas Co.* (1934), 128 Ohio St. 335, 338–339, 190 N.E. 924, 926.

■ We find nothing among the evidentiary matters before the trial judge which would justify a conclusion that there existed a probability that Nichols' son would loan a gun to Bauer and that Bauer would probably use that gun to shoot a victim in a holdup.

■ The appellant goes on to argue that this court should adopt the doctrine that, when a person possesses a firearm, he should be held absolutely liable for any injury that occurs when he permits or leaves the firearm accessible to children. We find no case law nor statutory law within Ohio which would justify the adoption of such a doctrine. In support of this argument, the appellant relies heavily on the case of *Taylor v. Webster* (1967), 12 Ohio St.2d 53, 41 O.O.2d 274, 231 N.E.2d 870. There is a very material difference between the *Taylor* case and this case. At the time of *Taylor*, there was in effect former R.C. 2903.06, which read:

"No person shall sell, barter, furnish, or give to a minor under the age of seventeen years, an air gun, musket, rifle, shotgun, revolver, pistol, or other firearm, or amunition [*sic*] therefor, or, being the owner or having charge or control thereof, knowingly permit it to be used by a minor under such age." H.B. No. 1 (1953).

The *Taylor* court noted that it is the settled law of Ohio that where a legislative enactment imposes upon a person a specific duty for the protection of others, his failure to observe that duty constitutes negligence *per se*. In the *Taylor* case, a mother had furnished an air gun to her son who was age ten. This furnishing of the gun to a minor under the age of seventeen years was obviously negligence *per se*. Since *Taylor*, R.C. 2903.06 has been repealed (134 Ohio Laws, Part II, 1866) and replaced by R.C. 2923.21 which provides, among other things, that no person shall furnish any firearm to a person under age eighteen, except for purposes of lawful hunting, or for purposes of instruction in firearm safety, care, handling, or marksmanship under the supervision or control of a responsible adult. All of the evidence in this case reflected that whenever the minor son involved was using a firearm, it was always in the presence of an adult. Additionally, there is no evidence that Nichols at any time furnished a firearm to his minor son for the purpose of loaning that firearm to another person.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY P.J., and FORD, J., concur.

JOSEPH E. O'NEILL, J., of the Seventh Appellate District, sitting by assignment.