NEAROR, Admr., Appellant,

v.

DAVIS; Davis et al., Appellees.

[Cite as *Nearor v. Davis* (1997), 118 Ohio App.3d 806.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–960279.

Decided March 19, 1997.

*Katzman, Logan & Halper* and *Steven D. Halper,* for appellant.

*James W. Gustin* and *John E. Brehm, Jr.,* for appellees Claude L. and Y. Jean Davis.

*McCaslin, Imbus & McCaslin* and *Richard G. Wendel II,* for appellee West American Insurance Co.

---

*Per Curiam.*

Plaintiff-appellant Sabrina Nearor ("appellant"), administrator of the estate of her son, decedent Steven N. Fitzgerald, Jr., appeals from the summary judgment granted by the Hamilton County Court of Common Pleas in favor of both defendants-appellees Claude L. Davis and Y. Jean Davis ("Davises") and intervenor-appellee West American Insurance Company ("West American"). Appellant raises two assignments of error asserting that the trial court erred by granting summary judgment in favor of both West American and the Davises.[1]

In the underlying wrongful-death complaint against the Davises and their sixteen-year-old son, Chadd Davis [2] ("Chadd"), appellant alleged, *inter alia,* that Chadd negligently shot and killed Fitzgerald, and that the Davises breached their duty to protect Fitzgerald by virtue of their voluntarily allowing Chadd to invite Fitzgerald into their home. Appellant also alleged that the Davises were negligent in owning, controlling and maintaining the gun that Chadd used to shoot Fitzgerald, in allowing Chadd access to the gun, and in supervising Chadd so as to prevent his negligent handling of the gun and accidental shooting of Fitzgerald, a foreseeable event. West American, the Davises' homeowners' insurer, intervened in the action, seeking, *inter alia,* a declaration that it had no duty to defend Chadd or to indemnify Chadd against any judgment that might be rendered against him in favor of appellant, because Fitzgerald's death was expected or intended and its policy excluded bodily injury expected or intended by the insured.[3]

---

1. The separate entries granting summary judgment in favor of the Davises and West American contain language consistent with Civ.R. 54(B).

2. Chadd is not a party to this appeal.

3. Neither appellant nor West American raises the issue of an insurer's duty to defend being separate from its duty to indemnify an insured. See *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118; *Four-O Corp. v. Cincinnati Ins. Co.* (Feb. 13, 1991), Hamilton App. No. C–890831, unreported, 1991 WL 17216. Instead, both parties argue the applicability of the "expected or intended" exclusion to the facts of this case without distinction being made as to the two duties. Chadd, the person to whom the duty to defend

The record discloses that on December 14, 1993, while in the Davises' home, Chadd killed Fitzgerald by shooting him in the head three times with a .22–caliber revolver taken by Chadd from under the mattress of his parents' bed.[4] In a signed statement to the police,[5] Chadd maintained that the initial shot to Fitzgerald's head occurred accidentally while the two were practicing dance steps in the kitchen. He explained that he cocked the hammer, and with his finger on the trigger, he and Fitzgerald "bumped or something" and "the gun went off while [Chadd] was in front of Fitzgerald." Fitzgerald fell, with a gunshot wound to his forehead. Chadd stated that he put the gun down and attempted to stop the bleeding with some paper towels. He then picked up the gun and shot Fitzgerald twice more in the head. When Chadd's eleven-year-old foster brother returned from school, he saw Fitzgerald's body and suggested that Chadd call the police. Chadd claimed that he was too frightened to do so and enlisted his brother's help in hiding Fitzgerald's body on the back porch.

The following day at school, Chadd told a friend, Bradley Dunn, that he had shot somebody in the head. That afternoon, when Dunn met Chadd at the Davises' home,[6] Chadd told him that he had argued with Fitzgerald about a set of hair clippers allegedly stolen by Fitzgerald, and that he shot Fitzgerald because he thought that he was going to punch him. Chadd also told another friend, Jeremy Ballew, that he shot Fitzgerald because he stole hair clippers. Chadd's mother testified that she noted after Fitzgerald's death that hair clippers were missing. Chadd and Dunn disposed of Fitzgerald's body by loading it into the trunk of Mr. Davis's automobile and dumping it at an undeveloped industrial park. Chadd paid Dunn for his help by giving him the watch he removed from Fitzgerald's wrist. At approximately 5:00 p.m. the following evening, a man walking his dog discovered Fitzgerald's body and summoned the police. Subsequently, Chadd was convicted of murdering Fitzgerald pursuant to R.C. 2903.02.

To prevail on a motion for summary judgment, the movant has the initial burden to demonstrate that there is no genuine issue of material fact remaining to be litigated, that it is entitled to judgment as a matter of law, and that it appears from the evidence, when viewed most strongly in the nonmovant's favor, that reasonable minds can come to but one conclusion and that conclusion is

---

may be owed, in the context of the applicable summary-judgment motions, is not a party to this appeal. Thus, we will not discuss the duties separately.

**4.** A deputy coroner testified that any of the wounds would have been fatal.

**5.** Chadd Davis did not testify during the proceedings below. However, his signed statement to the authorities is a part of the evidentiary material submitted to the court below.

**6.** The record discloses that the Davises were at their respective places of employment at the time of these events.

adverse to the nonmoving party. Civ.R. 56(C). Once this burden is met, the nonmoving party has the reciprocal burden of producing evidence on the issues for which it bears the burden of production at trial. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801; Civ.R. 56(E).

■ In her first assignment of error, appellant basically argues that the trial court erroneously granted summary judgment in favor of West American because the insurer failed to demonstrate that there was no genuine issue of material fact as to whether Chadd intended or expected to injure Fitzgerald. In its judgment entry, the trial court specifically declared that the injury to Fitzgerald was both expected and intended by Chadd, and therefore excluded from coverage.

"It is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within coverage of the policy. Coverage is provided if the conduct falls within the scope of coverage defined in the policy, and not within an exception thereto." *Gearing v. Nationwide Ins. Co.* (1996), 76 Ohio St.3d 34, 36, 665 N.E.2d 1115, 1117. The homeowners' policy at issue in this case provides personal liability insurance for bodily injury caused by an occurrence to which the policy applies. The policy defines an occurrence, in part, as an accident which results, during the policy period, in bodily injury. The policy also contains a provision excluding personal liability coverage for bodily injury "which is expected or intended by the insured."

In *Physicians Ins. Co. v. Swanson* (1991), 58 Ohio St.3d 189, 569 N.E.2d 906, the court determined that, in order to prevail in a declaratory judgment action on the basis that bodily injury is expected or intended by the insured and, thus, excluded from coverage, the insurer must demonstrate that the injury itself was expected or intended. "Expected or intended" injury has been defined as "specifically intend[ing] to cause the resulting harm or * * * substantially certain that such harm will occur." *Id.* at 193, 569 N.E.2d at 911, quoting *Quincy Mut. Fire Ins. Co. v. Abernathy* (1984), 393 Mass. 81, 84, 469 N.E.2d 797, 799. The two words are in the disjunctive; thus, "[i]f the harm is not intentional in the sense of being purposeful, it must, at the very least, be expected as 'substantially certain' to result." *Westfield Ins. Co. v. Roberts* (1993), 88 Ohio App.3d 532, 537, 624 N.E.2d 343, 346.

In coming to its conclusion that there was no genuine issue of material fact as to whether Chadd either intended or expected to injure Fitzgerald, the trial court considered, among other evidence, Chadd's murder conviction, deposition transcripts, and statements to the police. Although it only needed to find one of the two exclusionary factors to preclude coverage, the trial court correctly concluded that no genuine issue of material fact existed as to when the intent and the expectation of injury.

Chadd was convicted of murder pursuant to R.C. 2903.02. Murder includes the culpable mental state that the perpetrator purposely caused the death of another. "Purposely" is defined as with a "specific intention to cause a certain result." R.C. 2901.22(A). In *Preferred Risk Ins. Co. v. Gill* (1987), 30 Ohio St.3d 108, 30 OBR 424, 507 N.E.2d 1118, the Ohio Supreme Court concluded that a conviction for aggravated murder was sufficient to establish the intent to injure because intent was an essential element of the crime.[7] In this case, the trial court considered Chadd's murder conviction, for which intent was an essential element, as evidence that Chadd intended to injure Fitzgerald, *i.e.*, to cause his death. In coming to its conclusion that Chadd intended to harm Fitzgerald, the trial court also considered the evidence that Chadd fired three shots at Fitzgerald's head at close range, that he paid Dunn for his assistance, and that he tried to cover up the killing. We find no error in the trial court's conclusion.

The trial court also determined that Chadd expected to injure Fitzgerald, in part, based on Chadd's statement that he thought of the gun under his mother's mattress, retrieved it, cocked the hammer, placed his finger on the trigger, and danced around in proximity to and in front of Fitzgerald. He claimed the first shot was accidental, but offered no explanation for the subsequent shots. Chadd's mother and father both testified that they had told Chadd that guns were dangerous. His father testified that he had not trained Chadd in the use of firearms, but had let him shoot firearms in the air "a couple of times." His father further testified that the .22–caliber revolver had no safety, that the trigger was "not an easy pull," and that "you would have to put pressure on it to really pull it." His mother also testified that she told Chadd she had the .22–caliber revolver for protection, and that he was not to go near it. She also testified that Chadd said the murder was an accident.

Under the facts of the case, the trial court determined that there was no genuine issue of material fact, that West American was entitled to judgment as a matter of law, and that it appeared from the evidence, when viewed most strongly in favor of appellant, that reasonable minds could only conclude that Chadd both expected and intended Fitzgerald's injury. We find no error and, thus, overrule appellant's first assignment of error.

<hr>

7. Other Ohio courts have recognized *Gill, supra,* as standing for this proposition and have applied the analysis of *Gill* to other criminal convictions with differing results, depending on the degree of intent required for conviction of the various crimes. See *Wiggins v. Hampton* (1992), 78 Ohio App.3d 669, 605 N.E.2d 1264; *Stonestreet v. The Travelers Cos.* (Dec. 10, 1993), Ottawa App. No. 93-0T-006, unreported, 1993 WL 553614; *Fleck v. State Farm Ins. Cos.* (Aug. 24, 1990), Lake App. No. 89–L–14–070, unreported, 1990 WL 124648; *Allstate Ins. Co. v. Hevitan* (Jan. 24, 1996), Medina App. No. 2443-M, unreported, 1996 WL 27927. See, also, Annotation, Criminal Conviction as Rendering Conduct for which Insured Convicted within Provision of Liability Insurance Policy Expressly Excluding Coverage for Damage or Injury Intended or Expected by Insured (1985), 35 A.L.R.4th 1063.

In her second assignment of error, appellant maintains that the trial court erred by granting summary judgment in favor of the Davises. She argues that the Davises were negligent in allowing Chadd access to the gun and in failing to supervise adequately him so to prevent him from handling their gun. The trial court granted summary judgment in favor of the Davises without providing its analysis for doing so. In the proceedings below, the Davises argued that the question of negligence should be determined based on premises liability. Appellant argued that negligent parental supervision was the appropriate theory. From our review of the transcript of the proceedings, it is obvious that the trial court considered the Davises' negligence pursuant to both premises liability and negligent parental supervision. Not being able to ascertain from its judgment entry, however, which analysis the court ultimately applied, we conclude that negligent parental supervision is the correct analysis, and that the court was correct in granting summary judgment in favor of the Davises.

First, we note that, at common law, parents are not ordinarily held liable for the tort of their child. *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505, 509. Liability may arise, however, based upon the parents' conduct where the "injury committed by the child is the foreseeable consequence of the parent's negligent act." *Id.* Therefore, in this case, any liability on behalf of the Davises results from their own alleged negligence in the control of their gun and the supervision of their son.

Ohio courts recognize three situations where parents' negligence results in liability in connection with the conduct of their child: (1) negligent entrustment of their child with "an instrumentality (such as a gun or car) which, because of the child's immaturity or lack of experience, may become a source of danger to others"; (2) "failure to exercise reasonable control over the child when the parent knows, or should know, that injury to another is a probable consequence"; and (3) consenting, sanctioning, or directing a child's known wrongdoing. *Huston v. Konieczny*, 52 Ohio St.3d at 217–218, 556 N.E.2d at 509. See, also, Annotation, Liability of Person Permitting Child to Have Gun, or Leaving Gun Accessible to Child, for Injury Inflicted by the Latter (1959), 68 A.L.R.2d 782; Annotation, Parents' Liability for Injury or Damage Intentionally Inflicted by Minor Child (1974), 54 A.L.R.3d 974.

In order to overcome a properly supported motion for summary judgment on a negligence claim, a plaintiff must identify a duty owed him by the defendant. *Keister v. Park Centre Lanes* (1981), 3 Ohio App.3d 19, 3 OBR 20, 443 N.E.2d 532. "The existence of a duty in a negligence action is a question of law," *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318, 544 N.E.2d 265, 270, and depends on the foreseeability of the injury. *Huston v. Konieczny*, 52 Ohio St.3d

at 217, 556 N.E.2d at 508. "Injury is foreseeable if a defendant knew or should have known that his act was likely to result in harm to someone." *Id.*

It is the first two situations delineated in *Huston v. Konieczny* that are arguably applicable to this case. "Parents of minor children have a duty to exercise reasonable control over their children in order to prevent harm to third persons, when the parents have the ability to control the child and they know, or should know, that injury to another is a probable consequence." *Haefele v. Phillips* (Apr. 23, 1991), Franklin App. No. 90AP–1331, unreported, 1991 WL 64896, citing *Huston v. Konieczny.* In other words, the duty is to exercise reasonable care to avoid foreseeable injury to others. *Haefele v. Phillips, supra.* "To establish foreseeability of the act or injury [pursuant to negligent supervision], plaintiff must prove that specific instances of prior conduct were sufficient to put a reasonable person on notice that the act complained of was likely to occur." *Id.* Thus, whether the Davises owed Fitzgerald a duty turns on whether a reasonably prudent person would have been put on notice by Chadd's prior acts that it was likely that he would injure Fitzgerald.

Negligent entrustment of a gun includes not only presenting the gun to a child, but also having a gun accessible to a child. *McGinnis v. Kinkaid* (1981), 1 Ohio App.3d 4, 9, 1 OBR 45, 49–50, 437 N.E.2d 313, 318. Neither party argues that a gun is not a dangerous instrumentality. We are unwilling to adopt the doctrine that the owner of a gun "should be held absolutely liable for any injury that occurs when he permits or leaves the firearm accessible to children." See *Bilicic v. Brake* (1989), 64 Ohio App.3d 304, 309, 581 N.E.2d 586, 589. Likewise, we cannot conclude as a matter of law that a gun being accessible to a sixteen-year-old always constitutes a danger to others. Thus, the query is whether a parent knows or should know that because of the child's age, judgment, or experience, the gun may become a source of danger to others. See *McGinnis v. Kinkaid, supra.*

The following facts are undisputed. The Davises left a loaded .22–caliber revolver between the mattress and box springs of their bed. The gun had been loaded by Mr. Davis and placed under the mattress by Mrs. Davis for her protection while Mr. Davis was out of town in August 1993. Ordinarily, the loaded gun would have been replaced in a locked safe in the Davises' closet, but they forgot to do so. Mrs. Davis had informed Chadd that the gun was under her mattress for her protection and warned him not to touch it. Neither parent had provided him training, although Chadd had shot a gun before under his father's supervision. Both parents warned Chadd that firearms were dangerous, could harm someone, and should not be pointed at anyone. Chadd had access to the Davises' bedroom, but neither parent knew that Chadd had previously taken the firearm out of their bedroom to show his friends.

Chadd had been a good student until a point in his junior-high-school years. He had one appearance in juvenile court concerning his acceptance of a stolen jacket from another boy in trade for his own. According to his mother, Chadd was absolved of any wrongdoing. He attended a private Christian school for a short time when his grades began to founder. His mother withdrew him when another student alleged that Chadd and another student were passing what appeared to be marijuana between themselves. The alleged marijuana was never found. Mrs. Davis reported that Chadd displayed no behavioral problems, and did not fight or otherwise engage in violence. Worried about his grades, she consulted his school counselor about seeking additional counseling, but was told that he was "just a teenage boy" and would eventually get focused again.

Chadd would arrive home approximately three hours before his father each week night and would supervise his foster brothers. He would call his mother upon arriving home as he had been requested to do. The parents knew that Chadd disobeyed the house rule not to allow children in the house when they were not at home, because neighbors would tell them about such visits or they would find items broken from the children's "roughhousing." They would discipline Chadd for breaking the rule by revoking privileges. He would accept the punishment after trying to talk his parents out of it. The Davises knew that Chadd had taken Mrs. Davis's car keys from her bedroom dresser, and that Chadd and his friends drove her car without her permission and without having a license or permit. When Mrs. Davis discovered that this had been occurring, she corporally punished Chadd.

Accordingly, based on the foregoing undisputed facts, we hold, as a matter of law, that Fitzgerald's injuries were not foreseeable in that the cited specific instances of prior conduct were insufficient either to put a reasonable person on notice that Chadd was likely to shoot Fitzgerald or to show that the Davises knew or should have known that because of Chadd's age, judgment, or experience the gun could become a source of danger to others. Therefore, appellant's second assignment of error is overruled.

We therefore affirm the judgment of the trial court.

*Judgment affirmed.*

DOAN, P.J., HILDEBRANDT and GORMAN, JJ., concur.