Appellants Colleen Hau, a minor, and her mother Carrie Hau timely appeal the order of the Lorain County Court of Common Pleas granting summary judgment for defendants. We affirm.
 I.
The case below was an action for personal injuries suffered by young Colleen when she was hit by the errant swing of a golf club by six year old Jonathon Gill. Defendants below were Jonathon Gill and his parents David and Valorie Gill.[1]
David and Valorie Gill own a four and one-half acre lot in North Ridgeville on which are two houses and two barns. The Gills reside in one house, and use both barns for various purposes, including the storage of tools that Mr. Gill uses in his construction business. In March 1995, the Gills rented out the other house to Carrie Hau and her "common-law" husband David Vehlhaber.
On July 10, 1995, Colleen, age seven, and Jonathon, age six and one-half, were playing in an area behind the larger barn. This area of the property was not visible from either the Gill house or the rental house. In his deposition, Jonathon said he found a golf club in the tall grass behind the barn. He had a golf ball in his pocket and decided to "play golf." Colleen approached Jonathon and asked him if she could play golf with him. He said yes, then began to take a swing. Jonathon was unaware that Colleen was immediately behind him and as he swung the club he hit Colleen near the left eye with the golf club. At the time of the injury, there was no one else present in the area of the yard where Jonathon and Colleen were playing.
Colleen suffered a fracture of the skull above the left eye and the left orbit was crushed. She required surgery, including the use of two screws to secure the skull bone in place. On January 7, 1997, Colleen and her mother filed a complaint for damages on the following theories: negligent entrustment of a dangerous instrumentality to Jonathon, negligent supervision of the child, breach of R.C. 5321.04, a portion of Ohio's Landlord Tenant Act, and Jonathon's own negligence and reckless. The trial court granted summary judgment for defendants on February 12, 1998.
On appeal, appellants do not challenge the summary judgment on the issue of Jonathon's alleged negligence and recklessness or on the issue of negligent entrustment of a dangerous instrumentality. Rather, they assert that (1) the trial court erred in granting summary judgment on the issue of negligent supervision and (2) the trial court erred in granting summary judgment on the issue of breach of duty under Ohio's Landlord Tenant Act. We will deal with appellants' assignments of error in turn.
 II. First Assignment of Error: THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEES MOTION FOR SUMMARY JUDGMENT SINCE DEFENDANT-APPELLEES DAVID AND VALORIE GILL ARE LIABLE FOR THE FAILURE TO SUPERVISE THEIR CHILD, JONATHON GILL, WHEN THE PLAINTIFF-APPELLANT COLLEEN HAU'S INJURIES WERE A FORESEEABLE RESULT OF JONATHON GILL'S CONDUCT.
First, we note that to prevail in the trial court on summary judgment, the moving party "bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case." Dresherv. Burt (1996), 75 Ohio St.3d 280, 292. To accomplish this, the movant must be able to point to "evidentiary materials [that] show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Id.
at 292-293. If such evidence is produced, the non-moving party must proffer evidence that some genuine issue of material fact remains for the trial court to resolve. Id. at 293.
An appellate court reviews an award of summary judgment denovo and, like the trial court, must view the facts in the case in the light most favorable to the non-moving party. Grafton v. OhioEdison Co. (1996), 77 Ohio St.3d 102, 105.
Appellants claim that the Gills negligently supervised Jonathon. To prevail in a negligent supervision complaint, plaintiffs must show that: (1) the parents knew of their child's particular reckless or negligent tendencies (thus knew they needed to exercise control over him); (2) the parents had the ability to exercise control; and (3) the parents did not exercise that control. See D'Amico v. Burns (1984), 13 Ohio App.3d 325, 327;Nearor v. Davis (1997), 118 Ohio App.3d 806, 813. Finally, plaintiffs must show that the alleged parental negligence was the proximate and foreseeable cause of the injury suffered. SeeNearor, supra, at 812.
In Ohio, parental knowledge of a child's "vicious propensities" is an essential element in establishing negligent supervision. Landis v. Condon (1952), 95 Ohio App. 28, 29-30. "`To establish foreseeability of the act or injury [pursuant to negligent supervision], plaintiff must prove that specific instances of prior conduct were sufficient to put a reasonable person on notice that the act complained of was likely to occur.'" (Alteration in original.) Nearor, supra, at 813, quoting Haefelev. Phillips (April 23, 1991), Franklin App. No. 90AP-1331, unreported. As one court explained, "[p]arents cannot be held liable for negligent supervision of their children when the parents do not know of the children's propensity to engage in the sort of conduct that caused the plaintiff's injury." Doe v. Kahrs
(1995), 75 Ohio Misc.2d 7, 10.
In the case sub judice there was no evidence that young Jonathon had a propensity for behavior such as carelessly swinging a golf club in the presence of another without ensuring that the person is at a safe distance. Appellants failed to produce evidence that Jonathon ever caused injury to another child, let alone in the manner of the incident in question. Thus, appellants did not show that Jonathon's parents knew of some harmful tendency that required them to more carefully supervise Jonathon.
Appellants cite cases such as Cashman v. Reider's Stop-N-ShopSupermarket (1986), 29 Ohio App.3d 142 and D'Amico, supra, as support for the proposition that the question of negligent supervision is an issue of fact which should go to the jury. However, these cases offer little support for appellants' position. In Cashman, the parent allowed her four-year-old to negotiate a heavily loaded grocery cart in a store; the child lost control and injured an elderly shopper. The appellate court specifically noted that the appellant's affidavit created a question of fact about the parent's ability to control the child. In D'Amico, the plaintiff informed the parents that their young child had thrown debris into a sewer on plaintiff's property and plaintiff asked them to keep the child off his property. All this transpired before the child threw sufficient debris into the sewer to cause blockage and consequent property damage to plaintiff's home. In each of the cited cases there was evidence that the parents had actual, specific knowledge of the problematic behavior and arguably failed to exercise reasonable control. In each case the appellate court found that summary judgment in favor of defendant parents was not appropriate.
Appellants produced no evidence that Jonathon was anything other than a well-behaved child who had not caused any similar problems in the past. Even Carrie Hau admitted in her deposition that Jonathon was a "normal child." Appellants attempted to prove negligent supervision of Jonathon by advancing three arguments. First, they introduced evidence that Jonathon's younger brother accidentally injured a neighbor child while using a hammer unsupervised. This was meant to demonstrate that Jonathon's parents had a pattern of negligent supervision of their children. Second, on the same point, they alleged that the Gills' back yard was a dangerous environment where the children were allowed to play around tools and construction equipment. Third, they argued that the Gills should have continuously supervised Jonathon because "[s]ix-year-olds have a propensity for getting in trouble * * * simply because they lack sound judgment."
However, to prove parental negligent supervision, plaintiffs must show that defendant parents had prior knowledge that the offending child had a particular "vicious propensity" and they failed to exercise proper control over him. Even appellant Carrie Hau admitted that Jonathon had never engaged in the behavior in question, that is, the careless swing of a golf club. Appellants advance a standard that would impose strict parental liability for the natural consequences of normal childhood behavior. This is a burden that the Ohio legislature and the courts have been unwilling to impose on parents.
Viewing the facts in the light most favorable to appellants, we find that the trial court appropriately granted summary judgment for the Gills on the issue of negligent supervision, as there was no genuine issue of material fact and the Gills were entitled to judgment as a matter of law. Appellants' first assignment of error is not well taken and is therefore overruled.
 III. Second Assignment of Error: THE TRIAL COURT ERRED IN GRANTING DEFENDANT-APPELLEES MOTION FOR SUMMARY JUDGMENT SINCE DEFENDANT APPELLEES, DAVID AND VALORIE, ARE LIABLE FOR BREACH OF DUTIES UNDER THE OHIO LANDLORD TENANT ACT BECAUSE THE DEFENDANT-APPELLEES FAILED TO PROVIDE A SAFE COMMON AREA.
We view de novo the facts at issue in appellants' second assignment of error, alleging breach of the Ohio Landlord Tenant Act, R.C. 5321.04.
In Ohio at common law, a landlord was immune from liability for injury of his tenant on the property. Even now, a landlord's liability is "determined by a landlord's common law immunity from liability and any exceptions to that immunity that a court or legislative body has created." Shump v. FirstContinental-Robinwood Assoc. (1994), 71 Ohio St.3d 414, 418. In 1974, Ohio enacted R.C. Chapter 5321, the Landlord Tenant Act, to create certain exceptions to landlord immunity. In pertinent part, this statute states:
 (A) A landlord who is a party to a rental agreement shall do all of the following:
 Comply with the requirements of all applicable building, housing, health, and safety codes which materially affect health and safety;
 Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
 Keep all common areas of the premises in a safe and sanitary condition[.]
R.C. 5321.04.
Appellants argue that the instant injury occurred on a "common area" of the leased property. The parties in the present case entered into a written "Residential Lease" agreement on February 4, 1995. There was no mention in the lease of any "common area." In her deposition testimony, Valorie Gill acknowledged that there was a common driveway for both the Gill's house and the leased house. She also testified that the leased property included the yard in front and in back of the rental house itself. In her deposition, Carrie Hau confirmed this interpretation of the lease. Mrs. Gill further testified that she considered the yard immediately behind the Gill house to be the Gill's own private property, although she allowed the Hau children to play unsupervised in this part of the back yard. The injury to Colleen occurred in a more remote area of the back yard behind the large barn, which appellants call a "common area." Mrs. Gill testified that this area was dedicated almost exclusively to the use of the Gills and a third party who stored equipment there with the Gills' permission. She also testified that she permitted the Hau family to use the area to access the barn where they were permitted to store their bicycles. According to the testimony of Valorie Gill, she advised Carrie Hau that the Hau children could play behind the barn but only when supervised by Carrie or David. Appellants did not contradict this testimony. Nonetheless, they assert that the area behind the barn was a "common area."
The Landlord Tenant Act does not define the term "common area." It defines residential premises as "a dwelling unit for residential use and occupancy and the structure of which it is a part, the facilities and appurtenances in it, and the grounds, areas, and facilities for the use of the tenants generally or the use of which is promised the tenant." R.C. 5321.01(C). In determining how much of the land is "for the use of the tenants," "[a] lease agreement for a building, in the absence of a provision passing a greater interest, will only pass that portion of the land which is necessary for the complete enjoyment of the building." 65 Ohio Jurisprudence 3d (1996), Landlord and Tenant, Section 129, citing Avery v. House (1887), 1 Ohio Cir. Dec. 468, 470.
A review of appellate cases dealing with "common areas" reveals that these areas generally included areas such as sidewalks, parking lots, foyers, and hallways which were under the control of the lessor and which were reasonably necessary to the use and enjoyment of the leased property.
 Appellants urge this Court to consider the area behind the large barn a "common area" despite Mrs. Gill's assertions to the contrary. Appellants base their claim on the fact that the Gills allowed appellants access to that property, albeit with the above restrictions. This analysis is incongruous because this area of the property was used not only by Mr. Gill in storing his construction equipment, but also by a third party who stored his large landscaping vehicles in the back of the property. Furthermore, appellants have offered no evidence that the area where the injury occurred was necessary to the reasonable enjoyment of the leased house. Such an interpretation has no basis in the written lease agreement or in the understanding of the parties to the lease. The fact that the Gills allowed the Hau children and their parents limited access to this area did not transform it into a common area "necessary for the complete enjoyment" of the Hau residence.
In order to prevail in their claim, appellants would have to prove that the Gills had a duty of care to appellants, that they breached that duty, and that the breach was the proximate cause of the injury sustained. Because the injury occurred on the Gills' own property, and not in a "common area," any duty imposed on a landlord by R.C. 5321.04(A)(3) does not attach in this case. Consequently, the Gills owed no duty to make that area safe for their tenants' use and they are not liable for Colleen's injury under a theory of landlord liability. The trial court appropriately granted summary judgment to the Gills on this issue. Thus, appellants' second assignment of error is overruled.
Having overruled both of appellants' assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Lorain County Court of Common Pleas to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellants.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
FOR THE COURT
CARR, J.
QUILLIN, J.
CONCUR
(Quillin, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)
[1] Initially, appellants alleged that Jonathon "was swinging a golf club and negligently and recklessly struck Plaintiff, Colleen Hau." Appellants do not challenge summary judgment for the Gills on the issue of Jonathon's negligence. Jonathon was six and one-half years old at the time of the incident, and Ohio law treats children under seven years of age as conclusively incapable of negligence. See D'Amico v. Burns
(1984), 13 Ohio App.3d 325, 326, citing DeLuca v. Bowden (1975),42 Ohio St.2d 392, at paragraphs one and two of the syllabus (holding that a child less than seven years old is as a matter of law incapable of negligence or an intentional tort).