OPINION
Plaintiff, Jody White, guardian for Curtis Primmer ("Curtis"), appeals from a judgment of the Franklin County Court of Common Pleas which granted the motion for summary judgment by defendants, Allan K. Vrable and Vrable Healthcare Services. On appeal, plaintiff sets forth the following seven assignments of error:
 I. The trial court erred when it misapplied the mandates of Rule 56 of the Ohio Rules of Civil Procedure.
 II. The trial courts [sic] decision is in violation of appellant's right to a jury trial as guaranteed under Section V of the Ohio Constitution.
 III. The court erred in excluding paragraph three, four and nine of Dr. James O'Donnell's affidavit.
 IV. The trial court erred when it did not allow the jury to determine the issue of proximate cause.
 V. The trial court committed reversible error when it ruled that there was no material issue of fact as to whether Allen [sic] Vrable had prior knowledge of Curtis Primmer's drug addiction.
 VI. The trial court erred by not considering 21 C.F.R. 1301.76 when it granted defendant's motion for summary judgment.
 VII. The trial court erred by granting summary judgment for defendant Susen Primmer.
The undisputed facts relevant to the issues raised on appeal are as follows. Allan K. Vrable was the owner and operator of Vrable Healthcare Services.[1] Donald C. Primmer ("Primmer"), Curtis's father, was employed by Vrable as a pharmacist from June 1981 through March 1992. While employed at Vrable, Primmer stole numerous types and quantities of scheduled drugs and provided them to his son Curtis and Curtis's then wife, Susen.[2] On the evening of April 25, 1991, Curtis suffered an acute opiate ingestion overdose. As a result of this overdose, Curtis suffered permanent injury and now resides in a nursing home. Immediately following Curtis's overdose, Susen Primmer ("Susen") moved in with Primmer, who continued to supply her with drugs in exchange for sexual favors until she moved out of his residence on January 31, 1992.[3]
On August 15, 1997, plaintiff filed the complaint herein on behalf of her brother, Curtis, to recover for injuries he sustained as the result of the drug overdose. By her complaint, plaintiff alleged that Vrable intentionally, recklessly and negligently permitted Primmer to order, control and distribute dangerous drugs and negligently failed to monitor the activities of Primmer in his control and handling of said drugs. Plaintiff further alleged that Vrable failed to control and supervise the distribution of dangerous drugs and failed to maintain adequate safeguards to ensure that dangerous drugs would not be wrongly distributed.[4] Plaintiff's complaint also alleged that on many occasions, Primmer and defendant Susen Primmer maliciously, intentionally, recklessly, and negligently administered dangerous drugs obtained from Vrable to Curtis, causing him severe injury.
On May 7, 1998, Susen filed a motion for summary judgment and a memorandum in support thereof in which she argued that she was entitled to judgment as a matter of law because there existed no genuine issue of material fact regarding whether she administered the overdose of drugs to Curtis on April 25, 1991. The memorandum was supported by her affidavit, in which she attested that on April 25, 1991, she returned home to find Curtis passed out on their bed. She also discovered blood on the toilet seat. From these observations, Susen assumed that Curtis had injected himself with drugs. She telephoned Primmer, who advised her to let Curtis sleep. After her attempts at awakening Curtis the next morning were unsuccessful, she summoned emergency medical personnel, who transported Curtis to the hospital. Susen attested that she did not administer any drugs to Curtis on the night he overdosed.
On May 18, 1998, Allan Vrable and Vrable Healthcare Services filed a motion for summary judgment in which they admitted that they negligently permitted Primmer to order, control and distribute dangerous drugs, failed to control and supervise the distribution of drugs, and failed to monitor Primmer's activities. They argued, however, that despite their admission of negligence, they were entitled to judgment as a matter of law based upon the following arguments: the public policy of Ohio does not recognize a cause of action where the action is based upon the injured party's own illegal and wrongful conduct; the public policy of Ohio does not recognize a cause of action where an adult causes his own injury by voluntarily overdosing on illegal drugs; plaintiff was barred from recovery under the doctrine of primary assumption of the risk; Curtis's actions in voluntarily ingesting drugs and Primmer's criminal conduct constituted intervening, superseding causes of Curtis's injuries; and no genuine issue of material fact existed regarding whether the drugs consumed by Curtis were prescription drugs stolen by Primmer from Vrable.
Vrable attached to the motion for summary judgment the depositions of Susen Primmer, Allan Vrable and Donald Primmer. In her deposition, Susen stated that in May 1987, Primmer began supplying Curtis and her, along with several other family members and friends, with scheduled drugs that he had stolen from Vrable. Susen never informed anyone from Vrable of Primmer's actions. Susen also averred that to her knowledge, none of the persons whom Primmer supplied with drugs ever advised Vrable that they were receiving stolen drugs from Primmer and that Vrable had no knowledge of Primmer's drug thefts until Susen's mother contacted them in early 1992 and reported the thefts.
Regarding the events of April 25, 1991, Susen stated that when she returned home at approximately 9:30 p.m., Curtis was already "messed up"? slobbering, slurring his words, unable to stand, and unable to stay awake. At some later point in the evening, Curtis went into their bathroom and gave himself an injection. She did not know exactly what drugs Curtis used. When she couldn't awaken Curtis the next day, she called an ambulance. He was then transported to Doctors West Hospital, where he slipped into a coma. He remained comatose for eight and one-half weeks.
In his deposition, Allan Vrable stated that he hired Primmer as a pharmacist in 1981. During the interview process, Primmer revealed that he had previously been the subject of an investigation by the Ohio State Board of Pharmacy ("pharmacy board"). Upon further investigation, Vrable learned that the board's inquest was in regard to the sale of cough syrup containing codeine at a pharmacy at which Primmer had previously been employed. According to Vrable, when he called the pharmacy board to verify Primmer's statement, he was told only that Primmer "was in the wrong place at the wrong time" and was cleared of any allegations of wrongdoing. Allan Vrable further stated that he was unaware until 1995 that Primmer had been convicted of the improper disposition of scheduled drugs in 1981. He stated that he had no knowledge that Primmer was involved in the theft of drugs until he turned the investigation over to the pharmacy board in 1992. Finally, he attested that during the years that Primmer was employed by Vrable, he had never heard that Curtis had overdosed on drugs.
In his deposition, Donald Primmer stated that Curtis began using drugs in the 1970's. Prior to his overdose in April 1991, Curtis overdosed on three separate occasions. Primmer further averred that during his employment as a pharmacist with Seelig Pharmacy in 1981, he pled guilty to federal charges of distributing without a prescription within a forty-eight-hour period more than four ounces of a Schedule V controlled substance, cough medicine with codeine. As a result of that conviction, he was sentenced to three years' probation. He was also put on probation by the pharmacy board.
He further testified that he began his employment with Vrable in 1981. In the mid-1980's, he began stealing scheduled drugs from Vrable and supplying them to family members. Primmer further stated that Vrable knew nothing about Curtis's drug addiction or the theft of drugs until Susen's mother called and reported the thefts after Curtis overdosed.
On June 23, 1998, plaintiff filed a memorandum in opposition to the motions for summary judgment filed by Vrable and Susen Primmer. In support of her arguments therein, plaintiff relied on her own affidavit, as well as the depositions of Allan Vrable, Donald Primmer, Susen Primmer, and Connie O'Connell and excerpts from Susen Primmer's trial testimony offered in Primmer's criminal trial.
In her affidavit, plaintiff (Donald Primmer's daughter), attested that although she knew that her father routinely stole drugs from Vrable and dispensed them to family members, including Susen and Curtis Primmer, she never informed Vrable of her father's actions.
In her deposition, Connie O'Connell, Executive Director of Operations for Vrable, stated that Vrable was unaware of Primmer's drug thefts until early 1992.
On September 25, 1998, the trial court granted Vrable's motion for summary judgment, finding that Primmer's criminal conduct and Curtis's actions in voluntarily ingesting or injecting illegal drugs constituted intervening and superceding causes of Curtis's injuries, thereby breaking the chain of causation stemming from defendants' negligence in permitting Primmer to order, control and distribute dangerous drugs, in failing to control and supervise the distribution of dangerous drugs, and in failing to monitor Primmer's activities. The trial court's decision was formally journalized by entry dated October 7, 1998.[5] On October 22, 1998, plaintiff filed a timely notice of appeal from the October 7, 1998 judgment.
In a separate decision filed on September 25, 1998, the trial court granted Susen Primmer's motion for summary judgment, finding that plaintiff failed to set forth any evidence that Susen provided or injected Curtis with drugs on April 25, 1991. The trial court's decision granting Susen Primmer's motion for summary judgment was never journalized.
As plaintiff's first, fourth and fifth assignments of error all argue that the trial court erred in granting summary judgment to Vrable, this court will address them jointly.
In reviewing a trial court's disposition of a summary judgment motion, an appellate court applies the same standard as that applied by the trial court. Maust v. Bank One Columbus, N.A.
(1992), 83 Ohio App.3d 103, 107. An appellate court reviews a summary judgment disposition independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711. Before summary judgment may be granted under Civ.R. 56(C), the trial court must determine that: "* * * (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.* * *" State ex rel. Parsons v. Fleming
(1994), 68 Ohio St.3d 509, 511, citing Temple v. Wean United, Inc.
(1977), 50 Ohio St.2d 317, 327. Summary judgment is a procedural devise to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the nonmoving party. Murphyv. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
Although the court is obligated to view the facts in a light most favorable to the nonmoving party, when a properly supported motion for summary judgment is made, the nonmoving party is not permitted to rest upon the mere allegations or denials contained in his or her pleading but must come forth with specific facts showing the existence of a genuine issue for trial. Civ.R. 56(E). The nonmoving party need not try the case at this level, but must produce more than a scintilla of evidence in support of his or her claims. Bank One, Columbus, N.A., v. Young (Sept. 7, 1999), Franklin App. No. 98AP-1113, unreported (1999 Opinions 3290, 3297).
As noted previously, in their motion for summary judgment, Allan Vrable and Vrable Healthcare Services admitted that they negligently permitted Primmer to order, control and distribute dangerous drugs, failed to control and supervise the distribution of drugs, and failed to monitor Primmer's activities. They argued, however, that despite their negligence, they were entitled to judgment as a matter of law on the basis that Primmer's criminal actions and Curtis's actions in knowingly, willingly, and voluntarily ingesting or injecting enough illegal drugs to cause an acute opiate overdose constituted intervening and superceding causes of his injuries, thereby breaking the chain of causation stemming from their negligence in failing to control and supervise the distribution of their controlled drugs and in failing to control the actions of their employee, Primmer.
In response, plaintiff argued that Primmer's criminal actions and Curtis's overdose were foreseeable events which flowed directly from Vrable's negligent monitoring of its inventory of controlled drugs. Specifically, plaintiff argued that it should have been foreseeable to Vrable that Primmer, who had previously been convicted of the misuse of scheduled drugs, would again engage in criminal behavior involving the misuse of scheduled drugs. Plaintiff further argued that it should have been foreseeable to Vrable that Curtis would overdose on the drugs stolen and supplied by his father. Plaintiff posited that the actions taken by Primmer and Curtis were the precise types of foreseeable events that laws and regulations pertaining to the storage and distribution of controlled substances are designed to prevent.
In order for a plaintiff to prevail on a tort claim, the plaintiff must prove that the defendant's tortious acts proximately caused the plaintiff's injures. See, e.g., DiGildo v.Caponi (1969), 18 Ohio St.2d 125. When a defendant acts tortiously, and that tortious conduct is followed by the independent act of another person, the defendant's negligence is the proximate cause of the plaintiff's injuries only if the defendant could have reasonably foreseen the intervening act of the other person. In Mudrich v. Standard Oil Co. (1950), 153 Ohio St. 31, the Ohio Supreme Court stated:
 Whether an intervening act breaks the causal connection between negligence and injury depends upon whether that intervening cause was reasonably foreseeable by the one who was guilty of the negligence. If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the
Furthermore, "* * * when, between negligence and the occurrence of an injury, there intervenes a willful, malicious, and criminal act of a third person which causes the injury but was not intended by the negligent person and could not have been foreseen by him, the causal chain between the negligence and the accident is broken." Bilicic v. Brake (1989), 64 Ohio App.3d 304,307, quoting 70 Ohio Jurisprudence 3d (1986), 122, Negligence, Section 51. See, also, Feichtner v. Ohio Dept. of Transp. (1995),114 Ohio App.3d 346. In such cases, the alleged negligence would be only the remote or removed cause of the injury and not the proximate cause giving rise to liability. Bilicic, supra.
This court has reviewed all of the evidentiary materials which were before the trial court and we find absolutely no evidence to set forth a genuine issue of material fact as to whether Primmer's criminal conduct was intended by Vrable. Instead, the evidence demonstrates that Vrable was a victim of Primmer's drug thefts. Primmer's drug thefts were a clear departure from his employment and in no way facilitated or promoted Vrable's business. "An employer is not liable for independent acts of employees that in no way facilitate or promote the employer's business." Anderson v. Toeppe (1996), 116 Ohio App.3d 429,437.
Further, none of the evidentiary materials submitted present a genuine issue of material fact as to whether Vrable should reasonably have foreseen that Primmer would steal controlled substances from the pharmacy and supply them to his son Curtis, who would then voluntarily ingest or inject enough of these drugs to cause an acute opiate overdose.
As noted previously, Allan Vrable testified he did not know of Primmer's criminal conviction until 1995. Susen Primmer testified that she did not tell anyone from Vrable about Primmer's theft of drugs. She further testified that, to her knowledge, none of the other persons whom Primmer supplied with drugs ever advised Vrable that they were receiving drugs stolen from Vrable. Susen also stated that, to her knowledge, Vrable had no knowledge of Primmer's drug thefts until her mother contacted them in early 1992 and reported the thefts. Both Vrable and O'Connell testified that Vrable was unaware of the drug thefts until early 1992. Allan Vrable averred that as soon as he became aware of Primmer's actions, he notified the pharmacy board and the Columbus Police Department. Primmer attested that Vrable knew nothing about his theft of drugs until Susen's mother called and reported the thefts after Curtis overdosed. Plaintiff herself attested that although she knew that her father routinely stole drugs from Vrable and dispensed them to Curtis, she never informed Vrable of her father's actions.
Similarly, we find nothing among the evidentiary materials presented which would create a genuine issue of material fact as to whether Vrable should reasonably have foreseen that Curtis would voluntarily ingest enough of the drugs stolen by Primmer to cause him to overdose and suffer permanent injuries. Primmer testified that Vrable knew nothing of Curtis's previous history with scheduled drugs. In addition, Allan Vrable testified that during the entire time that Primmer was employed by Vrable, he was unaware that Curtis had ever overdosed on drugs.
In short, we find no evidentiary materials to support plaintiff's allegations that Curtis's overdose and resulting injuries were the natural and foreseeable result of Vrable's failure to monitor its inventory of controlled drugs. Rather, this court agrees with the trial court that Primmer's criminal actions and Curtis's voluntary ingestion of illegal prescription drugs constituted intervening and superceding causes of Curtis's injuries. Accordingly, plaintiff's first, fourth and fifth assignments of error are overruled.
By the second assignment of error, plaintiff argues that the trial court's improper grant of summary judgment denied the right to trial by jury. "An individual's right to a jury trial is not abridged by the proper granting of a motion for summary judgment." Tschantz v. Ferguson (1994), 97 Ohio App.3d 693, 713, citing Houk v. Ross (1973), 34 Ohio St.2d 77, 83-84. Having determined that the trial court's grant of summary judgment was proper, plaintiff was not denied the right to a trial. Accordingly, the second assignment of error is overruled.
By the third assignment of error, plaintiff contends that the trial court erred in excluding paragraphs three, four, and nine of the affidavit of plaintiff's expert, Dr. James O'Donnell, which was filed with plaintiff's memorandum in opposition to Vrable's motion for summary judgment.
Initially, we note that a trial court has broad discretion in determining whether to admit or exclude evidence. Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand. Krischbaum v. Dillon
(1991), 58 Ohio St.3d 58, 66. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217.
In his affidavit, Dr. O'Donnell attested that he, a registered pharmacist in Illinois, had been retained by plaintiff to serve as an expert on the standards for pharmacy management and control of scheduled drugs. The challenged paragraphs state, as follows:
 3. Vrable * * * fell below the acceptable pharmaceutical standard of care in controlling the distribution and loss of scheduled narcotics. Vrable * * * [was] intentional, negligent and reckless in the hiring of Donald Primmer without properly investigating his previous convictions.
 4. I have read Jody White's affidavit. Given what Donald Primmer did it was predictable given his background, access to controlled substances and the abysmal lack of controls at Vrable * * *. If it had not been Donald Primmer, it may well have been someone else. This is exactly the kind of conduct to be guarded against in the management of a Pharmacy.
* * *
 9. Because of the lack of controls and the fact that Donald Primmer was given access and authority to circumvent any security measures put in place, and other facts I have reviewed, I believe that Vrable * * * had a conscious disregard for the rights and safety of other persons that had a great probability of causing substantial harm. Given the Ohio Pharmacy Board Report, the deposition[s] of Donald Primmer, Allan K. Vrable and Connie O'Connell, the controls in place were woefully inadequate. Vrable['s] * * * actions were unthinkable, outrageous, and violates every standard for the management of a pharmacy.
The trial court struck the foregoing paragraphs on the basis that Dr. O'Donnell based much of his testimony on plaintiff's improper affidavit[6] and that the paragraphs contained conclusory legal assumptions and standards which were beyond the scope of expert testimony pursuant to Evid.R. 703.
An affidavit may include an expert's opinion if the requirements of Civ.R. 56(E) and Evid. R. 702-705 are satisfied.Smythy v. Miguel (Oct. 11, 1990), Cuyahoga App. No. 59274, unreported. Therefore, the affidavit must demonstrate that the affiant's opinion is based on personal knowledge; that the facts contained in the affidavit are admissible evidence; and that the affiant is competent to testify as to the matter stated. Civ.R. 56(E). Further, the affidavit must include: (1) the necessary information from which the court can conclude that the affiant is an expert and that the expert's opinions are needed to assist the trier of fact (Evid.R. 702); and (2) the facts or data upon which the expert bases his opinions, whether such facts or data were perceived by him or obtained from evidence before the court (Evid.R. 703 and 705). Id. Since the purpose of an affidavit is to demonstrate that there exists a genuine issue of material fact requiring a need for trial, the affidavit must set forth specific facts and not merely legal conclusions or opinions. Id.; Stamperv. Middletown Hosp. Assn. (1989), 65 Ohio App.3d 65, 69.
Upon review of Dr. O'Donnell's affidavit, we find that the trial court did not abuse its discretion in striking the three challenged paragraphs. Initially, we note that the affidavit does not state that the opinions contained therein are based upon the personal knowledge of Dr. O'Donnell. Moreover, with regard to paragraph three, Dr. O'Donnell does not outline any facts which would support his legal conclusion that Vrable fell below the standard of care in the control and distribution of scheduled drugs and was negligent in hiring Primmer without properly investigating his previous convictions. In paragraph four, Dr. O'Donnell bases much of his opinion on statements contained in plaintiff's affidavit, much of which was stricken by the court. With regard to paragraph nine, Dr. O'Donnell sets forth no facts in support of his legal conclusion that Vrable "had a conscious disregard for the rights and safety of other persons that had great probably of causing substantial harm."
Furthermore, even if this court were to conclude that the trial court abused its discretion in striking the challenged portions of Dr. O'Donnell's affidavit, such error would be harmless, given that Dr. O'Donnell's affidavit speaks solely to the issue of Vrable's negligence in failing to monitor its supply of prescription drugs?an issue conceded by Vrable in its motion for summary judgment and determined by this court to have been superceded by Primmer's criminal acts and Curtis's voluntary ingestion of drugs. Based on the foregoing, we find that the trial court did not abuse its discretion by striking paragraphs three, four, and nine of Dr. O'Donnell's affidavit. Accordingly, the third assignment of error is overruled.
By the sixth assignment of error, plaintiff contends that the trial court abused its discretion in failing to consider Section 1301.76, Title 21, C.F.R. in its deliberations with regard to Vrable's motion for summary judgment. On August 10, 1998, plaintiff filed a motion for leave to supplement her memorandum contra Vrable's motion for summary judgment with a copy of Section 1301.76, Title 21, C.F.R.[7] In support of her motion, plaintiff argued that Vrable violated federal law in employing Primmer, as he had been convicted, prior to his employment with Vrable, of a felony offense relating to controlled substances. The trial court denied the motion on the basis that Section 1301.76, Title 21, C.F.R. was not new legislation; therefore, plaintiff had more than adequate opportunity to incorporate her argument into her original memorandum contra.
As we have previously recognized, a trial court has broad discretion in the admission or exclusion of evidence, and its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to the party challenging the trial court's decision. Krischbaum, supra. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore, supra.
We find nothing unreasonable, arbitrary or unconscionable in the trial court's decision to deny plaintiff's motion to supplement the record with a copy of Section 1301.76, Title 21, C.F.R.
As noted by the trial court, plaintiff offered no explanation for her failure to incorporate her argument into her original memorandum contra. In addition, the trial court stated that even if it had considered Section 1301.76, Title 21, C.F.R., such consideration would not have altered the outcome of the case. Accordingly, plaintiff's sixth assignment of error is overruled.
By her seventh assignment of error, plaintiff contends that the trial court erred in granting summary judgment in favor of defendant Susen Primmer. Upon review of the record, we find that the trial court's September 25, 1998 decision granting summary judgment to Susen Primmer was never journalized. Civ.R. 58(A) requires a "judgment to be prepared" following a decision, as a judgment is effective only when entered by the clerk upon the journal. A court speaks only through its journal. Torres v.Sears, Roebuck Co. (1980), 68 Ohio App.2d 87, 89. Since no journal entry has been filed, this court has no jurisdiction to hear plaintiff's seventh assignment of error. Accordingly, the seventh assignment of error is overruled.
Having overruled each of plaintiff's seven assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BROWN, J., and LAZARUS, P.J., concur.
[1] Defendants Allan K. Vrable, R.Ph., and Vrable Healthcare Services will hereinafter be referred collectively as "Vrable."
[2] Susen and Curtis Primmer were divorced on November 5, 1992.
[3] On June 17, 1993, Donald Primmer pled guilty to one count of rape, two counts of corrupting another with drugs, three counts of trafficking in drugs and four counts of theft of drugs. The rape charges related to conduct against Susen and the drug charges related to conduct against both Curtis and Susen.
[4] Plaintiff's complaint also named Vrable's Greentree Pharmacy ("Greentree") as a defendant in the action. However, on August 31, 1998, plaintiff dismissed her claims against Greentree pursuant to a settlement agreement approved by the Franklin County Probate Court.
[5] On October 14, 1998, plaintiff dismissed her claim against Donald Primmer.
[6] The trial court struck nine paragraphs of plaintiff's affidavit pursuant to a motion to strike filed by Vrable.
[7] Section 1301.76(a), Title 21, C.F.R. states, in relevant part: "The registrant shall not employ, as an agent or employee who has access to controlled substances, any person who has been convicted of a felony offense relating to controlled substances * * *. "