OPINION
{¶ 1} Plaintiffs-appellants, Cheryl and David Coolidge, appeal a judgment of the Hancock County Common Pleas Court granting summary judgment in favor of defendants-appellees, Larry and Barbara Riegle, and Riverdale Local School District ("Riverdale"). The Coolidges assert that summary judgment in favor of the Riegles was inappropriate because material issues of fact remain concerning the violent propensities of the Riegles' son, Adam Riegle. Additionally, they claim the trial court erred by finding that Riverdale's political subdivision immunity under R.C. 2744 extended to employer intentional torts. Having reviewed the entire record, we find that material issues of fact do remain regarding Adam's violent propensities and the Riegles' liability. However, we do not find that the trial court erred in granting summary judgment in favor of Riverdale. Accordingly, we sustain Appellants' first assignment of error, overrule their second and third assignments of error, and reverse in part the judgment of the trial court.
 {¶ 2} Around the age of three, Adam Riegle was diagnosed with autism and pervasive disability disorder. As a result of his diagnosis, Adam was eligible for services under the Individuals with Disabilities Education Act ("IDEA"). IDEA is a federal law requiring states to provide a full educational opportunity to all children with disabilities. Section 1412(a)(2), Title 20, U.S.Code. One of the goals of IDEA is to educate disabled children in the least restrictive environment possible. This goal is stated as:
To the maximum extent appropriate, children with disabilities,including children in public or private institutions or othercare facilities, are educated with children who are not disabled,and special classes, separate schooling, or other removal ofchildren with disabilities from the regular educationalenvironment occurs only when the nature or severity of thedisability of a child is such that education in regular classeswith the use of supplementary aids and services cannot beachieved satisfactorily.
Section 1412(a)(5)(A), Title 20, U.S.Code.
 {¶ 3} The primary means of implementing congressional goals through IDEA is through the Individualized Education Program ("IEP"). Section 1401(11), Title 20, U.S.Code; AustintownLcl.Sch. Dist. Bd. of Edn. v. Mahoning Cty. Bd. of Mental Retardation Dev. Disabilities (1998), 131 Ohio App.3d 711, 715. An IEP is developed through meetings between a local school district representative, the child's teacher, the parents or guardians of the child, and when appropriate the disabled child. Section 1414(d)(1)(B), Title 20, U.S. Code. In part, an IEP is a written statement of a child's present levels of educational performance; measurable annual goals, including benchmarks or short-term objectives; special education, including related services and supplementary aids and services to be provided the child; and a statement of the program modifications or supports for school personnel that will be provided for the child. Section 1414(d)(1)(A), Title 20, U.S.Code.
 {¶ 4} Prior to enrolling Adam in kindergarten, the Riegles and Riverdale personnel developed an IEP for Adam. Riverdale wanted to place Adam in a more restricted setting designed specifically for handicapped students, while the Riegles wanted to place Adam in a regular kindergarten classroom fulltime. Eventually, the IEP resulted in a plan in which Adam was placed in a regular kindergarten class for five out of ten days. On the other days, Adam attended a kindergarten class for multi-handicapped children. Although Adam exhibited violent and disruptive behavior during class, he was promoted by Riverdale to the first grade.
 {¶ 5} Together, Barbara Riegle and Riverdale personnel developed an IEP for Adam's first grade year that placed Adam in a regular classroom with the assistance of a full-time aid. Again, Adam exhibited disruptive and violent behavior, yet was promoted to the second grade.
 {¶ 6} In May of 1998, an IEP for Adam's second grade year was completed. The IEP team set forth the following recommendation:
Typical 2nd grade classroom, including PE, with full-time aide and the exception of speech/language therapy and OT, full-time aide.
 {¶ 7} In accordance with the IEP, Adam was placed in Cheryl Coolidge's mainstream second grade classroom with the assistance of a full-time aide, Linda Strader. On October 19, 1998, a periodic review of Adam's IEP was held. As a result of increased violent and disruptive behavior on the part of Adam, the team modified the previous plan and recommended:
Typical 2nd grade classroom, including PE, with full-time aide — with the exception of speech/language therapy and OT services pull out to separate location as necessary, full-time aide, behavior plan.
 {¶ 8} On October 22, 1998, Cheryl Coolidge's second grade class was taking a math test. Adam refused to take part in the test. Instead, Adam's attention was focused on a clock which sat on his desk. Adam's aide, Linda Strader, made an effort to take the clock away. Strader's efforts were unsuccessful, so she sought Coolidge's assistance. Coolidge also attempted to take the clock away, but Adam refused to let go. Adam proceeded to fly into a rage, screaming at Coolidge and striking her repeatedly on the chest, arms, and shins. Adam's disruptive behavior prompted Coolidge to remove him to the hallway. There, Coolidge took Adam to the floor and restrained him. She told him that when he calmed down, they would go back into the classroom. After a time, when Adam appeared to relax, Coolidge began to let him get up, and Adam kicked her in the face and neck area.
 {¶ 9} Based on the attack, the Coolidges filed a negligence claim against the Riegles and an employment intentional tort claim against Riverdale. Both the Riegles and Riverdale moved for summary judgment, and the trial court granted both parties' motions. From this judgment, the Coolidges appeal presenting three assignments of error for our review.
 Standard of Review {¶ 10} An appellate court reviews a summary judgment order de novo. Hillyer v. State Farm Mut. Auto. Ins. Co. (1999),131 Ohio App.3d 172, 175. Accordingly, a reviewing court will not reverse an otherwise correct judgment merely because the lower court utilized different or erroneous reasons as the basis for its determination. Diamond Wine Spirits, Inc. v. DaytonHeidelberg Distr. Co., 148 Ohio App.3d 596, 2002-Ohio-3932, at ¶25, citing State ex rel. Cassels v. Dayton City School Dist. Bd.of Edn. (1994), 69 Ohio St.3d 217, 222. Summary judgment is appropriate when, looking at the evidence as a whole: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) construing the evidence most strongly in favor of the nonmoving party, it appears that reasonable minds could only conclude in favor of the moving party. Civ.R. 56(C); Horton v. Harwick Chem.Corp, (1995), 73 Ohio St.3d 679, 686-687. If any doubts exist, the issue must be resolved in favor of the nonmoving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 11} The party moving for the summary judgment has the initial burden of producing some evidence which affirmatively demonstrates the lack of a genuine issue of material fact. Stateex rel. Burnes v. Athens City Clerk of Courts (1998),83 Ohio St.3d 523, 524; see, also, Dresher v. Burt (1996),75 Ohio St.3d 280, 293. The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; they may not rest on the mere allegations or denials of their pleadings. Id.
 Assignments of Error Assignment of Error I As a matter of law, the Trial Court committed errorprejudicial to the plaintiffs-appellants, by entering a summaryjudgment in favor of the parents of a school-age child andagainst the child's teacher when it determined that thebehavioral history of the child did not support an inference thathe displayed violent or dangerous propensities and that it wasnot foreseeable that the teacher, other school employees or otherstudents could be injured by the child.
 {¶ 12} In their first assignment of error, the Coolidges maintain that the trial court erred by granting summary judgment to the Riegles. They claim that a material issue of fact remains regarding the Riegles prior knowledge of Adam's violent propensities and likelihood to harm people. Specifically, they allege that the Riegles were aware or reasonably should have been aware that Adam suffered from conditions that would result in fits of rage and physical violence towards others. Given the Riegles' awareness of their son's propensity for violence, the Coolidges assert that the Riegles acted negligently by insisting that Adam be placed in a regular classroom and, as a result of this negligence, the appellants suffered injuries and damages.
 {¶ 13} First we must consider whether the Riegles can be held liable for Coolidge's injuries. To overcome a motion for summary judgment on a negligence claim, the plaintiff must identify a duty owed to him by the defendant. Nearor v. Davis (1997),118 Ohio App.3d 806, 812, citing Keister v. Park Centre Lanes
(1981), 3 Ohio App.3d 19, 22-23. In tort law, whether a defendant owes a duty to a plaintiff depends upon the relationship between the parties. Huston v. Konieczny (1990), 52 Ohio St.3d 214,217. The existence of a duty depends upon the foreseeability of injury. Id. An injury is foreseeable if a defendant knew or should have known that his actions were likely to result in harm to another. Id. Once a duty is found to exist, a defendant must exercise that degree of care which an ordinarily careful and prudent person would exercise in the same or similar circumstances. Id.
 {¶ 14} Ordinarily at common law, a parent is not liable for damages caused by their child's wrongful conduct. Elms v. Flick
(1919), 100 Ohio St. 186, paragraph four of the syllabus;Huston, 52 Ohio St.3d at 217. However, liability may arise based upon the parent's conduct "when the injury committed by the child is the foreseeable consequence of a parent's negligent act." Huston, 52 Ohio St.3d at 217. Ohio courts have recognized the following three situations in which parents will be held liable for their children's conduct: (1) "Parents may incur liability when they negligently entrust their child with an instrumentality (such as a gun or car) which, because of the child's immaturity or lack of experience, may become a source of danger to others;" (2) "A parent may also be held responsible for failure to exercise reasonable control over the child when the parent knows, or should know, that injury to another is a probable consequence;" and (3) parents may be held responsible when they know of a child's wrongdoing and consent, direct, or sanction it. Id. at 217-218; Nearor, 118 Ohio App.3d at 812.
 {¶ 15} It is the second situation delineated above that is arguably applicable to this case. "To establish foreseeability of the act or injury * * *, plaintiff must prove that specific instances of prior conduct were sufficient to put a reasonable person on notice that the act complained of was likely to occur."Nearor, 118 Ohio App.3d at 813, quoting Haefle v. Phillips
(Apr. 23, 1991), Franklin App. No. 90AP-1331, unreported. Thus, in a traditional parental negligence case, whether the Riegles owed Coolidge a duty would depend on whether a reasonably prudent person would have been put on notice by Adam's prior acts that he was likely to injure his teachers.
 {¶ 16} The trial court found no conflict between the federal preference for educating disabled children in a regular classroom and a parent's obligation to ensure that their disabled child does not cause harm to others. Thus, the trial court focused on the question of foreseeability and found "nothing in Adam's history of school attendance that could substantiate a finding that he would cause injuries of the magnitude alleged by [the Coolidges]."
 {¶ 17} It is clear that Adam has had problems with hitting and kicking others — be they teachers, aides, or fellow students — since first being enrolled in kindergarten at Riverdale. These incidents of lashing out occurred most often when Adam would become frustrated with a classroom activity or when he would be bumped or touched by another student. The evidence that bears this out comes from deposition testimony of Adam's parents and teachers, multiple IEP plans, minutes from meetings between the parents and Riverdale staff, and daily notes that were exchanged between the Riegles and Adam's teachers.
 {¶ 18} Upon our review of the record and the applicable law, we are unable to agree with the trial court's finding that, based upon Adam's past actions, injury to another was not a foreseeable risk.
 {¶ 19} Furthermore, we find that material issues of fact also remain concerning the proximate cause. The purposes and procedures of IDEA complicate the circumstances of the case herein. Because the express terms of IDEA entitle Adam to be educated, to the maximum extent appropriate, with children who do not have disabilities, merely advocating that their son be placed in a normal educational setting pursuant to Adam's right under IDEA cannot, without more, make the Riegles' conduct liable. And, while the Riegles, as Adam's parents, are part of the IEP team which made the decisions regarding Adam's placement, the final placement decision was not one the Riegles could make alone. Instead, the final decision as to Adam's placement, and the conditions thereof, was committed to the entire IEP team of which the Riegles were only a part. Section 1414(d), Title 20, U.S.Code. However, there was evidence presented that the Riegles' aggressive participation and pressure at the IEP meetings was a major factor in the IEP team's final decision.
 {¶ 20} Having found that unresolved material issues of fact remain, we sustain the Coolidges' first assignment of error and overrule the decision of the trial court granting summary judgment in favor of the Riegles.
 Assignment of Error II As a matter of law, the Trial Court committed errorprejudicial to the plaintiffs-appellants, when it granted summaryjudgment in favor of a school district and against itsteacher-employee by determining that the school district wasimmune from suit for an intentional injury suffered by theteacher as a result of the sovereign immunity provisionscontained in Revised Code Chapter 2744.
 {¶ 21} In their second assignment of error, the Coolidges assert that the trial court erred by granting summary judgment in favor of Riverdale. They claim that it was error for the trial court to find that the school district was entitled to political subdivision immunity under R.C. 2744.02(A)(1).
 {¶ 22} As a general rule, R.C. 2744.02(A) provides that political subdivisions are not liable in damages for, among other things, injuries to persons. R.C. 2744.01(F) defines a "political" subdivision as a "municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." (Emphasis added.) Riverdale is clearly a political subdivision under this provision. R.C.2744.02(B), however, creates a number of exceptions to that general rule of nonliability. The Coolidges claim that the exception to political subdivision immunity found in R.C.2744.02(B)(5) is applicable to the case herein. R.C.2744.02(B)(5) states that:
* * * [A] political subdivision is liable for injury, death,or loss to person or property when liability is expressly imposedupon the political subdivision by a section of the Revised Code,
including, but not limited to, sections 2743.02 and 5591.37 of the Revised Code. Liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon a political subdivision, because of a general authorization in that section that a political subdivision may sue and be sued, or because that section uses the term "shall" in a provision pertaining to a political subdivision. (Emphasis added.)
 {¶ 23} The Coolidges assert that the provisions of R.C.4101.11 and 4101.12, which they claim expressly impose an affirmative duty on Riverdale to furnish a safe environment for employees and/or frequenters, satisfy the conditions set forth in R.C. 2744.02(B)(5) necessary to eliminate Riverdale's immunity defense. R.C. 4101.11 states that:
Every employer shall furnish employment which is safe for theemployees engaged therein, shall furnish employment which shallbe safe for the employees therein and for frequenters thereof,shall furnish and use safety devices and safeguards, shall adoptand use methods and processes, follow and obey orders, andprescribe hours of labor reasonably adequate to render suchemployment and places of employment safe, and shall do everyother thing reasonably necessary to protect the life, health,safety and welfare of such employees and frequenters.
 {¶ 24} R.C. 4101.12 provides:
No employer shall require, permit, or suffer any employee togo or be in any employment or place of employment which is notsafe, and no such employer shall fail to furnish, provide and usesafety devices and safeguards, or fail to obey and follow ordersor to adopt and use methods and processes reasonably adequate torender such employment and place of employment safe. No employershall fail to do every other thing reasonably necessary toprotect the life, health, safety, and welfare of such employeesor frequenters.
 {¶ 25} The appellants assert that R.C. 4101.11 and 4101.12
provide protection for employees and frequenters of political subdivisions. This Court has previously considered a similar argument and held that R.C. 4101.11 and 4101.12 do not abrogate a political subdivision's immunity to a negligence claim. Blantonv. Marion (May 20, 1998), 3rd Dist. No. 9-97-88, unreported. R.C. 2744.02(B)(5) clearly states that a political subdivision only incurs liability when the Revised Code expressly imposes such liability upon the political subdivision. Both R.C. 4101.11
and 4101.12 impose general liability on all employers without expressly imposing such liability with specificity upon political subdivisions. Because the legislature has failed to expressly include political subdivisions in the language of R.C. 4101.11
and 4101.12, it would be improper for this court to invade the province of the legislature by reading such language into the statutes. See Tinsley v. Cincinnati (1957), 146 N.E.2d 336, 339. Accordingly, we find no merit in the Coolidges' first argument that Riverdale's political subdivision immunity is void.
 {¶ 26} Additionally, the Coolidges argue that R.C. 2744.09(C) removes their claim of employer intentional tort against Riverdale from the ambit of the immunity statute. R.C. 2744.09(C) provides:
This chapter does not apply to, and shall not be construed toapply to the following:
 (C) Civil actions by an employee of a political subdivisionagainst the political subdivision relative to wages, hours,conditions, or other terms of his employment. (Emphasisadded.)
 {¶ 27} The Coolidges maintain that the conditions of Cheryl's employment were affected with the placement of Adam in her classroom.
 {¶ 28} Several of our sister appellate courts have determined that the term "conditions" in this statute refers to "those conditions that employees must satisfy in order to maintain his or her employment rather than actual physical conditions in the workplace." Terry v. Ottawa Cty. Bd. of Mental Retardation Dev. Disabilities, 151 Ohio App.3d 234, 2002-Ohio-7299, at ¶ 24, citing Fabian v. Steubenville (Sept. 28, 2001), 7th Dist. No. 00-JE-33, unreported.
 {¶ 29} Specifically, the Sixth District has noted that:
 * * * R.C. 2744.09(C) tracks the language used in the OhioPublic Employees Collective Bargaining Act, R.C. Chapter 4117,which covers all subjects that "affect wages, hours, terms andconditions of employment. * * * [T]he word "conditions" should begiven its technical meaning as developed in the context ofcollective-bargaining law.
 Terry, at ¶ 24.
 {¶ 30} We find the reasoning in Terry to be persuasive and hold that R.C. 2744.09(C) does not remove the Coolidges' claim of employer intentional tort from the general grant of immunity provided to Riverdale under R.C. Chapter 2744. See, also,Schmidt v. XeniaBd. of Edn., 2nd Dist. No. 2002-CA-69, 2003-Ohio-213, at ¶ 15-23; Engleman v. Cincinnati Bd. of Edn.
(June 21, 2001), Hamilton App. No. C000597, unreported; Chase v.Brooklyn City School Dist. (2001), 141 Ohio App.3d 9, 18-19.
 {¶ 31} Although, the Ohio Supreme Court has struck down statutory immunity for employer intentional torts committed by private entities resulting in workplace injuries, the Supreme Court has never done so with respect to the statutory immunity granted to political subdivisions performing governmental functions. We likewise decline to do so. Therefore, we overrule the Coolidges' second assignment of error.
 Assignment of Error III As a matter of law, the Trial Court committed errorprejudicial to the plaintiffs-appellants, when it determined, inthis case, that the provisions of Revised Code Chapter 2744 wereconstitutional, since such provisions operated to deprive ateacher of her common law right to sue her school districtemployer for an intentional tort.
 {¶ 32} In their final assignment of error, the Coolidges contend that R.C. 2744 is unconstitutional because it violates Section 16, Article I, of the Ohio Constitution, which provides for open access to the courts and for suits against the state as provided by law. The appellants assert that R.C. 2744 cannot withstand constitutional challenge to the extent that it operates to remove an employee's right to a remedy for an employer intentional tort.
 {¶ 33} Numerous other courts, including the Ohio Supreme Court, have heard constitutional challenges to R.C. 2744 based on Section 16, Article I of the Ohio Constitution. Fabrey v.McDonald Village Police Dept. (1994), 70 Ohio St.3d 351,354-355; Fahnbulleh v. Strahan (1995), 73 Ohio St.3d 666, 669;Eischen v. Stark Cty. Bd. of Commrs.s, 5th Dist. No. 2002CA00090, 2002-Ohio-7005, at ¶ 18; Terry, at ¶ 26. In each of these cases the court upheld the political subdivision immunity. Id. We find the reasoning and precedent of these cases to be persuasive.
 {¶ 34} Plaintiff asserts, however, that this case is different because it presents the specific issue of whether R.C. 2744 may grant immunity to a political subdivision against an employer intentional tort action. Plaintiff claims that the authority of Brady v. Saftey-Kleen Corp. (1991),61 Ohio St.3d 624 and Johnson v. BP Chemicals, Inc. (1999), 85 Ohio St.3d 304
is controlling. However, this argument presents a distinction without a difference. Although the Ohio Supreme Court has held that a claim for employer intentional tort against a private employer may not be abrogated by statute, Riverdale is not a private employer. Limiting tort actions against a political subdivision for acts made in the performance of governmental functions has repeatedly withstood constitutional challenge in a variety of contexts. Nothing in this case before us either compels or permits a different result. Therefore, we hold that R.C. 2744 is constitutional as to an employer intentional tort. The third assignment of error is overruled.
 Conclusion {¶ 35} After reviewing the entire record, we hold that the trial court erred in granting summary judgment in favor of the Riegles. Particularly, we find that material issues of fact remain concerning Adam's likelihood to commit violent acts and the liability of the Riegles. With Respect to Riverdale, we hold that the trial court did not err in granting summary judgment in their favor. Accordingly, we affirm in part and overrule in part the judgment of the trial court.
 {¶ 36} Having found error prejudicial to the appellant herein, in the particulars assigned and argued, we reverse in part the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.
Judgment affirmed in part and reversed in part.
Walters, P.J., concurs.
Shaw, J., concurs in part and dissents in part.