SAMPSON, Appellee,

v.

CUYAHOGA METROPOLITAN HOUSING AUTHORITY et al., Appellants.

[Cite as *Sampson v. Cuyahoga Metro. Hous. Auth.*, 188 Ohio App.3d 250, 2010-Ohio-3415].

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 93441.

Decided July 22, 2010.

Schuster & Simmons Co., L.P.A., and Nancy C. Schuster, for appellee.

Roetzel & Andress, L.P.A., Joseph W. Boatwright IV, Lewis W. Adkins Jr., Gina A. Kuhlman, Karen D. Adinolfi, and Aretta K. Bernard, for appellants.

---

MARY EILEEN KILBANE, Judge.

{¶ 1} Pursuant to Loc.App.R. 26 and in accordance with *McFadden v. Cleveland State Univ.*, 120 Ohio St.3d 54, 2008–Ohio–4914, 896 N.E.2d 672, this court held an en banc conference to address an alleged conflict between *Sampson v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. No. 93441, 2010–Ohio–1214, 2010 WL 1115797, and several other cases from this appellate district.

{¶ 2} Appellee, Darrell Sampson, brought suit against Cuyahoga Metropolitan Housing Authority ("CMHA") and three of its employees, George Phillips, Anthony Jackson, and Ronald Morenz (collectively, "appellants"), alleging that appellants negligently accused him of theft and arrested him. Appellants filed a motion for summary judgment with the trial court, alleging that they were immune from suit. The trial court denied the motion, and appellants filed the instant appeal.

## Facts

{¶ 3} Sampson was raised in a CMHA housing development. In 1988, at age 22, CMHA hired him as a groundskeeper. In 2000, Sampson was promoted to the position of Serviceman V Plumber. CMHA plumbers work in the Property Maintenance Department, reporting for work each day at the plumbers' shop, which is located at 4315 Quincy Avenue, Cleveland, Ohio. At the plumbers' shop, they punch in for work, pick up their tools, and receive their work assignments for the day.

{¶ 4} The plumbers service the CMHA properties in Cleveland as well as the surrounding suburbs, and CMHA provides the plumbers with numerous vehicles to drive to these locations. Gasoline credit cards were assigned to CMHA vehicles so that employees could purchase gasoline for the vehicles using their individual employee PIN numbers provided by CMHA.

{¶ 5} On July 20, 2004, CMHA received an anonymous tip on the CMHA "tips hotline," accusing plumber Alvin Roan of using a CMHA gasoline credit card to purchase gasoline for his personal vehicle. Lieutenant Ronald Morenz worked at the CMHA Police Detective Bureau and was assigned to investigate the allegations against Roan under the supervision of CMHA Police Chief Anthony Jackson, who worked under the direction of CMHA Executive Director George Phillips.

{¶ 6} Morenz investigated Roan and the other plumbers for approximately four weeks. On August 27, 2004, Phillips, along with Jackson, called a special meeting of CMHA employees. Phillips, Jackson, and Morenz all orchestrated a plan to arrest numerous plumbers, as well as painters (the subjects of a separate investigation), at the employee meeting. When Phillips had worked at the Chicago Housing Authority, he had witnessed a very similar mass arrest, where numerous Chicago Housing Authority employees were arrested by police at a warehouse. Phillips determined that arresting the employees in front of 200 of their fellow workers would save them the embarrassment of being arrested at home in front of their children. Phillips and Jackson issued a press release detailing the agenda for a press conference to be held on August 31, 2004, at 10:30 a.m., immediately following the employee meeting regarding employee theft and arrests.

{¶ 7} On August 30, 2004, the plumbers were told not to follow their daily routine of reporting to the plumbers' shop on Quincy Avenue the following morning, but rather to report for work directly to the CMHA warehouse located at 4700 Lakeside Avenue, Cleveland, Ohio, for an employee meeting.

{¶ 8} On August 31, 2004, approximately 200 CMHA employees gathered at the CMHA warehouse. Sergeant Ray Morgan of the CMHA Community Policing Unit announced the names of 13 CMHA employees, including Sampson. Morgan then announced that the 13 individuals (six plumbers and seven painters) were under arrest for theft. The men were handcuffed and searched in front of their fellow CMHA employees. The arrested employees were then taken behind a partition where they were photographed and then led outside into waiting patrol cars. Television news cameras were present outside and photographed the arrested employees, video of which later aired on local news broadcasts depicting the identity of those arrested. Appellants maintain that they did not contact the media prior to the arrests.

{¶ 9} The arrested employees spent the night in jail before being released the following day without charges. All arrested employees were placed on administrative leave from their positions with CMHA.

{¶ 10} On October 7, 2004, Sampson and several other plumbers were indicted on charges of theft, misuse of credit cards, and theft in office. The state contended that Sampson had misused the gasoline credit cards provided for the CMHA vehicles. On February 2, 2005, nearly five months after his arrest at the employee meeting, the state dismissed the charges.

{¶ 11} On November 22, 2005, an arbitration hearing was held to determine whether Sampson should be reinstated to his position with CMHA. Ultimately, the arbitrator concluded that CMHA had failed to present any evidence of gasoline theft and ordered that Sampson be reinstated. The arbitrator stated:

There were other failures in Lt. Morenz's investigation. Lt. Morenz testified that he did not check to see if each vehicle in the Property Maintenance Department had its own gas card until September 2004. At no time did he talk to Grievant or any of his co-workers. * * * In the face of the evidence, the arbitrator finds that the preponderance of the evidence shows no theft of gasoline at all, much less any evidence that the grievant was guilty of such theft.

{¶ 12} In March 2006, Sampson returned to work for CMHA. According to Sampson, the position he returned to involved duties that were different from those involved in his position prior to the arrest. Further, Sampson claims that he was no longer permitted to retrieve his own equipment or drive CMHA vehicles. Sampson was subsequently diagnosed with posttraumatic stress disorder.

## Procedural Background

{¶ 13} On August 31, 2006, Sampson filed suit against appellants, alleging intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process. Sampson later amended his complaint to include negligent misidentification.

{¶ 14} On November 3, 2006, appellants filed a motion for judgment on the pleadings with respect to the negligent infliction of emotional distress. On November 17, 2006, after receiving one extension of time, Sampson filed his brief in opposition. On December 5, 2006, appellants filed their reply brief. On October 2, 2007, the trial court granted the motion, dismissing the claim of negligent infliction of emotional distress but leaving all other claims pending.

{¶ 15} On December 12, 2008, appellants filed a motion for summary judgment, alleging sovereign immunity on all remaining claims. On January 9, 2009,

Sampson filed his brief in opposition. On January 13, 2009, appellants filed their reply brief.

{¶ 16} On June 4, 2009, the trial court denied the motion for summary judgment, finding that a genuine issue of material fact still existed as to whether appellants' conduct was wanton or reckless.

{¶ 17} Appellants filed the instant appeal pursuant to R.C. 2744.02, which allows political subdivisions and employees of political subdivisions to immediately appeal an order that denies immunity, asserting two assignments of error.

ASSIGNMENT OF ERROR NUMBER ONE

The trial court erred as a matter of law, in the prejudice of the Cuyahoga Metropolitan Housing Authority in not dismissing all claims against it on summary judgment because political subdivisions are absolutely immune from intentional tort claims pursuant to Ohio Revised Code 2744 and no exception to immunity applies to plaintiff's negligent misidentification claim.

{¶ 18} CMHA argues that it is immune from suit pursuant to R.C. 2744.02. Sampson argues that pursuant to R.C. 2744.09, CMHA is barred from raising immunity in this case.

## Summary–Judgment Standard

{¶ 19} In Ohio, appellate review of summary judgment is de novo. *Comer v. Risko,* 106 Ohio St.3d 185, 2005–Ohio–4559, 833 N.E.2d 712, ¶ 8. "Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate." *Mosby v. Sanders,* 8th Dist. No. 92605, 2009–Ohio–6459, 2009 WL 4694789, at ¶ 11, citing *Hollins v. Shaffer,* 182 Ohio App.3d 282, 2009–Ohio–2136, 912 N.E.2d 637, ¶ 12.

{¶ 20} The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club* (1998), 82 Ohio St.3d 367, 696 N.E.2d 201, as follows: "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Id. at 369–370, 696 N.E.2d 201. See also *State ex rel. Duncan v. Mentor City Council,* 105 Ohio St.3d 372, 2005–Ohio–2163, 826 N.E.2d 832, ¶ 9, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

## Analysis

{¶ 21} Political subdivisions are immune from suit, with the exception of limited situations provided for by statute. *Campolieti v. Cleveland,* 184 Ohio App.3d 419, 2009–Ohio–5224, 921 N.E.2d 286, at ¶ 32, citing *Hodge v. Cleveland*

(Oct. 22, 1998), 8th Dist. No. 72283, 1998 WL 742171. Whether a political subdivision is immune from liability is a question of law that should be resolved by the trial court, preferably on a motion for summary judgment. *Sabulsky v. Trumbull Cty.*, Trumbull App. No. 2001–T–0084, 2002–Ohio–7275, 2002 WL 31886686, at ¶ 7, citing *Conley v. Shearer* (1992), 64 Ohio St.3d 284, 595 N.E.2d 862.

{¶ 22} In the motion for summary judgment, CMHA argued that it was entitled to immunity from suit pursuant to R.C. 2744.02, which states:

[A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

{¶ 23} In response, Sampson maintains that R.C. 2744.02 is inapplicable pursuant to an express exception outlined in R.C. 2744.09(B), which states that R.C. Chapter 2744 shall not apply to "[c]ivil actions by an employee * * * against his political subdivision relative to any matter that *arises out of the employment* relationship between the employee and the political subdivision." (Emphasis added.)

{¶ 24} CMHA argues that none of Sampson's causes of action stemmed from his employment, particularly his claim for intentional infliction of emotional distress. However, after a review of the facts and pertinent law, we find that all of Sampson's claims, including his claim for intentional infliction of emotional distress, clearly arose out of his employment relationship, thus barring CMHA from asserting immunity pursuant to R.C. 2744.09(B).

{¶ 25} CMHA argues that *Fuller v. Cuyahoga Metro. Hous. Auth.*, 8th Dist. No. 92270, 2009–Ohio–4716, 2009 WL 2894456, and *Inghram v. Sheffield Lake* (Mar. 7, 1996), 8th Dist. No. 69302, 1996 WL 100843, both support its position. However, both cases are clearly distinguishable.

{¶ 26} Fuller was a CMHA employee who was arrested after entering a vacant CMHA property while he was off duty. Fuller filed suit against CMHA for negligent hiring, retention, and intentional infliction of emotional distress. *Fuller* is clearly not relevant to our discussion in the instant case because Fuller was off duty at the time of his arrest, whereas here, an employee meeting was specifically scheduled for the sole purpose of arresting Sampson and several other coworkers, in front of several hundred employees, with the specific purpose of setting an example. Sampson's arrest was clearly within the purview of his employment, while Fuller's was not. Further, *Fuller* does not even address R.C. 2744.09, which is specifically at issue in this case.

{¶ 27} Similarly, *Inghram* is also factually distinguishable. While Inghram was working in North Royalton, he locked himself out of his vehicle. He contacted the North Royalton Police Department for assistance. When the officers arrived, they mistakenly arrested Inghram, believing a warrant was issued out of Sheffield Lake for his arrest. Later, it was discovered that the arrest warrant was for another individual of the same name. Inghram sued both North Royalton and Sheffield Lake for libel, slander, malicious prosecution, false arrest, abuse of process, and negligence. *Inghram* is clearly not relevant to our discussion here because, even though Inghram was arrested while he was working, his claims were not against his employer. *Inghram* never addressed R.C. 2744.09, which is our focus in the instant case.

{¶ 28} The first case in which this court specifically addressed whether intentional torts can arise out of an employment relationship pursuant to R.C. 2744.09(B) was *Ventura v. Independence* (May 7, 1998), 8th Dist. No. 72526, 1998 WL 230429. Ventura was employed by the city of Independence as a maintenance worker and had several medical conditions that restricted his ability to perform certain tasks at work. Ventura sued the city, alleging that the city failed to accommodate his medical conditions and that he was assigned tasks that exacerbated his conditions. Ventura alleged that this conduct by the city constituted an intentional tort. Although the *Ventura* court ultimately concluded that the intentional-tort claims did not arise out of the employment relationship, it did not conduct a full analysis of R.C. 2744.09(B) and concluded that 2744.09(B) did not apply to the specific facts of the case.

■ {¶ 29} Several subsequent cases from this court relied on *Ventura* to bar employees from recovering against political subdivisions for intentional torts. However, such reasoning was misplaced in light of the language used in *Ventura*, which limited its holding to the facts of that case. In *Nielsen–Mayer v. Cuyahoga Metro. Hous. Auth.* (Sept. 2, 1999), 8th Dist. No. 75969, 1999 WL 685635, this court stated:

This appellate court has recently determined that intentional torts do not arise out of the employment relationship and that the sovereign immunity codified in R.C. 2744, et seq., applies to immunize the political subdivision from such intentional tort claims.

Id. at *1.

{¶ 30} In support of this broad proposition of law, *Nielsen–Mayer* cited *Ventura*. However, *Ventura* articulated a narrow holding that the plaintiff could not recover for his intentional torts in that case because R.C. 2744.09(B) did not apply to those specific facts. *Ventura* did not create a broad proposition of law as stated in *Nielsen–Mayer*. Similarly, in *Chase v. Brooklyn City School Dist.* (2001), 141 Ohio App.3d 9, 749 N.E.2d 798, this court relied on an overly broad

interpretation of *Ventura* and concluded that intentional torts could not arise out of the employment relationship pursuant to R.C. 2744.09(B).

{¶ 31} In our more recently decided case, *Young v. Genie Industries,* 8th Dist. No. 89665, 2008–Ohio–929, this court reiterated that R.C. 2744.09(B) did not allow an employee to recover for an intentional tort against a political subdivision. Specifically, *Young* relied on *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, which held that intentional torts do not arise out of the employment relationship and that such conduct takes place outside of the employment relationship. We find this court's reliance on *Brady* in this context to be misplaced. *Brady* was a workers' compensation case and never dealt with sovereign immunity or R.C. 2744.09(B).

{¶ 32} In *Wilson v. Stark Cty. Dept. of Human Servs.* (1994), 70 Ohio St.3d 450, 639 N.E.2d 105, the Ohio Supreme Court recognized that political subdivisions are afforded broad immunity pursuant to Chapter 2744. However, *Wilson* never addressed the specific exceptions to immunity outlined in R.C. 2744.09, and we are unaware of any Ohio Supreme Court decision that has concluded that intentional torts cannot arise out of the employment relationship with respect to R.C. 2744.09(B).

{¶ 33} Therefore, we conclude that our reasoning in *Ventura* was limited to the specific facts of the case and that *Nielsen–Mayer,* 1999 WL 685635, and *Chase,* 141 Ohio App.3d 9, 749 N.E.2d 798, were erroneously decided because they applied a fact-specific holding to create a broad proposition of law, prohibiting recovery under R.C. 2744.09(B) for intentional torts under any circumstance. Further, we conclude that the reasoning in *Brady,* 61 Ohio St.3d 624, 576 N.E.2d 722, which held that intentional torts do not arise out of the employment relationship, is inapplicable because *Brady* dealt solely with workers' compensation law. Consequently, the reasoning in *Young,* 2008–Ohio–929, 2008 WL 603036, was misplaced because it relied exclusively on *Brady,* which is inapplicable.

{¶ 34} As we have determined that intentional torts can arise out of the employment relationship with respect to R.C. 2744.09(B), we must now look to the totality of the circumstances and determine whether Sampson's claims actually did arise out of the employment relationship. *Ruckman v. Cubby Drilling Inc.* (1998), 81 Ohio St.3d 117, 689 N.E.2d 917, citing *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 277, 551 N.E.2d 1271. In order for a claim to arise out of one's employment, there must be a causal relationship between the employment and the claim. *Keith v. Chrysler, L.L.C.,* 6th Dist. No. L–09–1126, 2009–Ohio–6974, 2009 WL 5174173, at ¶ 16, citing *Aiken v. Indus. Comm.* (1944), 143 Ohio St. 113, 117, 28 O.O. 50, 53 N.E.2d 1018. A direct causal connection is not

required; an indirect causal relationship is sufficient. *Keith* at ¶ 17, citing *Merz v. Indus. Comm. of Ohio* (1938), 134 Ohio St. 36, 11 O.O. 414, 15 N.E.2d 632.

{¶ 35} The facts of this case clearly indicate that Sampson's claims stem from his employment with CMHA. Sampson and approximately 200 coworkers were specifically told to report to the Lakeside Avenue warehouse for their work assignments. The meeting occurred during the workday, and the arrested employees were handcuffed and searched in front of their fellow employees. The facts indicate that CMHA intended this meeting to serve as an example to other employees, demonstrating that if caught stealing, they too would be placed on display and arrested, searched, handcuffed, and taken away in a patrol car before hundreds of their fellow workers. Phillips acknowledged that this served as an example to other CMHA employees, and Sampson maintains that while the employees were being arrested, Phillips announced to the remainder of the employees that this should serve as an example to them. Sampson's claims clearly arose out of his employment when he was arrested during the workday in front of all of his coworkers, rather than being arrested at home.

{¶ 36} Further, the investigation into the alleged gasoline theft by the plumbers was considerably shorter than other investigations into employee theft. Phillips stated that the investigation into theft by CMHA painters, who were arrested on the same day as Sampson and the other plumbers, lasted approximately nine months, as opposed to the mere several weeks of investigation conducted regarding the alleged plumber theft.

{¶ 37} Consequently, we find that R.C. 2744.09(B) bars CMHA from raising immunity pursuant to Chapter 2744. Therefore, summary judgment was properly denied with respect to all claims asserted against CMHA.

{¶ 38} This assignment of error is overruled.

ASSIGNMENT OF ERROR NUMBER TWO

The trial court erred, as a matter of law, to the prejudice of Anthony Jackson, George Phillips, and Ronald Morenz in not dismissing all claims against them on summary judgment pursuant to Ohio Revised Code Chapter 2744 because there is no evidence to create a genuine issue of material fact to except the individual defendants from immunity for intentional torts and individual defendants are immune from negligence claims as a matter of law.

{¶ 39} Phillips, Jackson, and Morenz argue that they are entitled to immunity against all of Sampson's claims. After a review of the record and applicable case law, we disagree.

{¶ 40} Sampson does not allege that R.C. 2744.09(B) applies to bar the defendants from attempting to raise immunity. By its express language, R.C. 2744.09(B), as discussed in the first assignment of error, applies only to political

subdivisions, and not their employees. As all three individual appellants have asserted immunity pursuant to Chapter 2744, we must conduct a two-tiered immunity analysis to determine whether summary judgment was appropriately denied. *State ex rel. Conroy v. Williams*, 185 Ohio App.3d 69, 2009–Ohio–6040, 923 N.E.2d 191, at ¶ 17, citing *Knox v. Hetrick*, 8th Dist. No. 91102, 2009–Ohio–1359, 2009 WL 792357, ¶ 15.

{¶ 41} First, it is presumed that employees of a political subdivision are immune from suit. There is no dispute that Phillips, Jackson, and Morenz are all employed by CMHA and that CMHA is a political subdivision. *Fuller*, 2009–Ohio–4716, 2009 WL 2894456, at ¶ 9, citing *Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009–Ohio–1250, 905 N.E.2d 606.

{¶ 42} Second, we must analyze whether any of the exceptions outlined in R.C. 2744.03(A)(6) apply to bar immunity. *State ex rel. Conroy*, 185 Ohio App.3d 69, 2009–Ohio–6040, 923 N.E.2d 191, at ¶ 20, citing *Knox*. Sampson specifically argues that R.C. 2744.03(A)(6)(b) applies. It states, "[T]he employee is immune from liability unless one of the following applies: * * * The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶ 43} Sampson presented evidence that the relatively short investigation consisted merely of looking at employee time cards and interviewing one car dealership regarding gas-tank capacity. Phillips, Jackson, and Morenz orchestrated the plan to arrest 13 employees at the warehouse in front of approximately 200 of their fellow workers. They claim that this was to protect the arrested employees from being arrested in front of their children. However, comments made in the subsequent press release indicate that the real motivation for arresting the employees at the warehouse was to use the arrested employees as an example for all CMHA employees, demonstrating that they too would be arrested if they stole from CMHA. Jackson helped draft the press release.

{¶ 44} In January 2005, Morenz drafted a report detailing problems with the investigation, such as that not all CMHA vehicles contained gas cards, employees shared their individual PIN numbers, and not all employees who needed to use the gas cards were issued PIN numbers. In March 2005, Morenz even noted that Sampson's explanation that he shared his PIN number was plausible. Charges were ultimately dismissed against all of the plumbers.

{¶ 45} Factual determinations as to whether conduct has risen to the level of wanton or reckless is normally reserved for trial. *Fabrey v. McDonald Village Police Dept.* (1994), 70 Ohio St.3d 351, 356, 639 N.E.2d 31, citing *Matkovich v. Penn Cent. Transp. Co.* (1982), 69 Ohio St.2d 210, 23 O.O.3d 224, 431 N.E.2d 652. Therefore, we find that Sampson has presented evidence that creates a genuine

issue of material fact as to whether the conduct of Phillips, Jackson, and Morenz was wanton or reckless pursuant to R.C. 2744.03.

{¶ 46} Consequently, summary judgment was appropriately denied with respect to the claims against the individual employees. This assignment of error is overruled.

Judgment affirmed.

GALLAGHER, A.J., and BLACKMON, JONES, and SWEENEY, JJ., concur.

BOYLE, J., concurs in judgment only.

ROCCO, J., concurs in part and dissents in part, with separate opinion.

CELEBREZZE Jr. and DYKE, JJ., concur in opinion of Judge ROCCO.

COONEY, J., concurs in part and dissents in part, with separate opinion, and concurs in opinion of Judge ROCCO as to the first assignment of error.

STEWART, J., concurs in opinion of Judge COONEY.

McMONAGLE, J., recused from participation.

KENNETH A. ROCCO, Judge, concurring in part and dissenting in part.

{¶ 47} As the writer of *Ventura v. Independence* (May 7, 1998), Cuyahoga App. No. 72526, 1998 WL 230429, I find myself constrained respectfully to dissent from the majority opinion's analysis and decision with respect to the first assignment of error.

{¶ 48} Contrary to the majority opinion's characterization, *Ventura* did not indicate that "its holding was limited to the facts of that case." The *Ventura* decision stated:

{¶ 49} "As he did in the trial court, appellant argues his claims for intentional tort and intentional infliction of emotional distress arise out of his employment relationship with the city; thus, he contends immunity does not apply. However, the court in *Ellithorp v. Barberton City School [Dist. Bd. of Edn.]* (July 9, 1997), Summit App. No. 18029, [1997 WL 416333,] * * * recently stated as follows:

{¶ 50} " 'Because Section 2744.02(B) includes no specific exceptions for intentional torts, courts have consistently held that political subdivisions are immune from intentional tort claims. See, e.g., *Wilson [v. Stark Cty. Dept. of Human Serv.* (1994), 70 Ohio St.3d 450, 452–453, 639 N.E.2d 105]* (claims for fraud and intentional infliction of emotional distress); *Farra v. Dayton* (1989), 62 Ohio App.3d 487, 576 N.E.2d 807 (claim for intentional interference with business interests); *Monesky v. Wadsworth* (Apr. 3, 1996), * * * Medina App. No. 2478–

M, [1996 WL 148655,] * * * (claims for trespass and demolition of a building). * * *

{¶ 51} " 'Ms. Ellithorp also argued in the trial court, and has argued on appeal, that Section 2744.09(B) of the Ohio Revised Code provides an exception to sovereign immunity applicable to this case. That Section provides that Chapter 2744 immunity does not apply to civil actions brought by an employee against a political subdivision "relative to any matter that arises out of the employment relationship between the employee and the political subdivision." The school board has asserted, and this Court agrees, that Section 2744.09(B) is inapplicable to the facts of this case. *An employer's intentional tort against an employee does not arise out of the employment relationship, but occurs outside of the scope of employment. Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, paragraph one of the syllabus.' (Emphasis added.) [*Ellithorp* at *3.] See, also, *Nungester v. Cincinnati* (1995), 100 Ohio App.3d 561, 567, 654 N.E.2d 423; *Brannon v. Troutman* [ (1992), 75 Ohio App.3d 233, 598 N.E.2d 1333]; *Marsh v. Oney* (Mar. 1, 1993), Butler App. No. CA92–09–165, [1993 WL 64177].

{¶ 52} "This court finds such reasoning persuasive. To paraphrase *Wilson,* to allow *such claims as appellant's would frustrate the purpose of both Chapter 2744 and laws providing for collective bargaining and workers' compensation; consequently, R.C. 2744.09(B) does not create an exception to immunity* for the political subdivision on the facts of this case." (Emphasis added.) *Ventura,* 1998 WL 230429, at *7–8.

{¶ 53} I note further that the proposition of law *Ventura* set forth has been followed, not just, as acknowledged by the majority opinion, in *Nielsen–Mayer v. Cuyahoga Metro. Hous. Auth.* (Sept. 2, 1999), Cuyahoga App. No. 75969, 1999 WL 685635, and *Chase v. Brooklyn City School Dist.* (2001), 141 Ohio App.3d 9, 749 N.E.2d 798, but in no less than ten additional subsequent cases, many from other Ohio appellate districts. *Lyren v. Wellington* (Sept. 1, 1999), Lorain App. No. 98CA007114, 1999 WL 688673 (electrical lineman electrocuted by village power lines); *Abdalla v. Olexia* (Oct. 6, 1999), Jefferson App. No. 97–JE–43, 1999 WL 803592 (sheriff acquitted of federal charges denied costs of legal representation by county); *Engleman v. Cincinnati Bd. of Edn.* (June 22, 2001), Hamilton App. No. C–000597, 2001 WL 705575 (teacher injured by student with known violent tendencies); *Coolidge v. Riegle,* Hancock App. No. 5–02–59, 2004–Ohio–347, 2004 WL 170319, appeal not allowed, 102 Ohio St.3d 1531, 2004–Ohio–3580, 811 N.E.2d 1150; *Fabian v. Steubenville* (Sept. 28, 2001), Jefferson App. No. 00 JE 33, 2001 WL 1199061 (wastewater-treatment worker injured by chlorine gas); *Terry v. Ottawa Cty. Bd. of Mental Retardation & Dev. Disabilities,* 151 Ohio App.3d 234, 2002–Ohio–7299, 783 N.E.2d 959 (workers injured by toxic sub-

stances); *Fleming v. Ashtabula Area City School Bd. of Edn.*, Ashtabula App. No. 2006–A–0030, 2008–Ohio–1892, 2008 WL 1777833 (racial-minority teacher's contract not renewed); *Zieber v. Heffelfinger,* Richland App. No. 08CA0042, 2009–Ohio–1227, 2009 WL 695533 (county treasurer's clerk assaulted at work by county auditor's clerk); and, more recently, *Jopek v. Cleveland,* Cuyahoga App. No. 93793, 2010–Ohio–2356, 2010 WL 2136468 (police officer accused of using unjustified force), and *Grassia v. Cleveland,* Cuyahoga App. No. 93647, 2010–Ohio–2483, 2010 WL 2206252 (city worker contracted Legionnaire's disease).

{¶ 54} The majority opinion thus overlooks the fact that *Ventura* has been cited numerous times, by this court as well as by other appellate districts, as authority for the position that R.C. 2744.09(B) is inapplicable to actions that allege intentional tort by political subdivision employees against their employer. Moreover, it is not the only case that so holds. See, e.g., *Schmitz v. Xenia Bd. of Edn.*, Greene App. No. 2002–CA–69, 2003–Ohio–213, 2003 WL 139970; *Sabulsky v. Trumbull Cty.*, Trumbull App. No. 2001–T–0084, 2002–Ohio–7275, 2002 WL 31886686, appeal not allowed, 98 Ohio St.3d 1567, 2003–Ohio–2242, 787 N.E.2d 1231.

{¶ 55} Clearly, the greater weight of authority does not support the majority opinion's disposition of the first assignment of error in this case. It is significant to me that as demonstrated by *Coolidge* and *Sabulsky,* the Ohio Supreme Court has had the opportunity, but has declined, to overrule appellate decisions that hold that in the context of employer intentional-tort claims, R.C. 2744.09(B) does not abrogate sovereign immunity. See, e.g., *Chase v. Brooklyn City School Dist.* (2001), 91 Ohio St.3d 1529, 747 N.E.2d 253.

{¶ 56} Therefore, I dissent from that portion of the opinion. I agree, however, with the majority opinion's disposition of the second assignment of error.

{¶ 57} Appellees may still pursue their claims against the individual appellants. Moreover, as pointed out in the majority opinion, and as contemplated by *Ellithorp* in its citation of *Wilson,* appellees utilized remedies available to them under the collective-bargaining agreement with the CMHA prior to filing this action. Thus, the appellees are not left without recourse in righting the perceived wrongs done to them.

CELEBREZZE Jr. and DYKE, JJ., concur.

COONEY, J., concurs as to the first assignment of error.

COLLEEN CONWAY COONEY, Judge, concurring in part and dissenting in part.

{¶ 58} I concur in the judgment to affirm the judgment of the trial court, but I respectfully dissent from the majority's overbroad holding that seeks to overturn well-reasoned precedent involving classic employer intentional-tort cases.

{¶ 59} Sampson's claims do not involve a classic employer intentional tort. Rather, he claimed that defendants acted maliciously, in bad faith, and in a wanton and reckless manner. His claims clearly arose out of his employment relationship — he was given a gasoline credit card to put gas in his employer's vehicles. He pursued arbitration through his collective-bargaining agreement and was reinstated to his position — further evidence that his claims arose out of his employment relationship. Therefore, CMHA is barred from asserting immunity under R.C. 2744.09(B).

{¶ 60} However, the majority goes well beyond the facts presented to overrule our prior decisions that actually involved employer intentional torts.[1] Therefore, I concur in the judgment to affirm, but I dissent from that portion of the majority opinion overruling our well-reasoned precedent.

{¶ 61} The reason Sampson alleged that defendants acted maliciously, in bad faith, and in a wanton and reckless manner was to strip them of their immunity pursuant to R.C. 2744.03(B)(6). The trial court correctly found that issues of fact existed on this issue and denied summary judgment. But the fact that no deliberate or intentional act was alleged by Sampson brings his claim outside the parameters of an employer intentional tort.

{¶ 62} As the Ohio Supreme Court recently noted, *Fyffe's* common-law test for employer intentional torts applied until the General Assembly enacted H.B. 498, effective April 7, 2005, R.C. 2745.01. *Kaminski v. Metal & Wire Prods. Co.*, 125 Ohio St.3d 250, 2010–Ohio–1027, 927 N.E.2d 1066, ¶ 32.

{¶ 63} *Kaminski* states:

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent. (*Van Fossen v. Babcock & Wilcox Co.* [1988], 36

---

1. It is significant that the Ohio Supreme Court had the opportunity to review our recent decision applying sovereign immunity in the context of employer intentional tort and declined jurisdiction. *Magda v. Greater Cleveland Regional Transit Auth.*, Cuyahoga App. No. 92570, 2009–Ohio–6219, 2009 WL 4190987, appeal not allowed, 124 Ohio St.3d 1510, 2010–Ohio–799, 922 N.E.2d 971.

Ohio St.3d 100, 522 N.E.2d 489, paragraph six of the syllabus, modified as set forth above and explained.)"

*Kaminski* at ¶ 31, 32, quoting *Fyffe v. Jeno's Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, paragraph two of the syllabus.

{¶ 64} Sampson's allegations do not rise to the level of an employer intentional tort, and therefore, the majority goes far beyond the issue presented to overrule this court's precedent that involved claims specifically described as employer intentional tort. On this basis, I agree with Judge Rocco's separate opinion.

{¶ 65} I find the following reasoning of the Fourth District Court of Appeals particularly instructive on this very subject. The court in *Nagel v. Horner*, 162 Ohio App.3d 221, 2005–Ohio–3574, 833 N.E.2d 300, ¶ 16–20, stated:

We acknowledge that Ohio courts consistently have held that under the provisions of R.C. Chapter 2744, political subdivisions retain their cloak of immunity from lawsuits for intentional-tort claims. See *Wilson v. Stark Cty. Dept. of Human Serv.* (1994), 70 Ohio St.3d 450[,] 452, 639 N.E.2d 105, where in a suit by a private citizen the court stated that R.C. 2744.02(B) contains no exceptions to immunity for torts of fraud and intentional infliction of emotional distress. We also acknowledge that in the workers' compensation context, the Supreme Court of Ohio has held that an employer's intentional tort against an employee occurs outside the scope of the employment relationship. *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, paragraph one of the syllabus. Consequently, Ohio appellate courts have held that R.C. 2744.09 has no application to employer-intentional-tort claims. See *Thayer v. W. Carrollton Bd. of Edn.*, Montgomery App. No. 20063, 2004–Ohio–3921, 2004 WL 1662198; *Terry v. Ottawa Co. Bd. of Mental Retardation & Developmental Disabilities* (2002), 151 Ohio App.3d 234, 783 N.E.2d 959; and *Chase v. Brooklyn City School Dist.* (2001), 141 Ohio App.3d 9, 749 N.E.2d 798, and the cases they cite.

But in *Gessner v. Union*, 159 Ohio App.3d 43, 2004–Ohio–5770, 823 N.E.2d 1, the Second District held that age-discrimination and wrongful-discharge claims arose out of the employment relationship, despite the defendant's claim that age discrimination is an intentional tort. In reaching its decision, the court noted that "[t]he case law on this issue is sparse, but that is not surprising in view of such an obvious point." Id. at ¶ 31. *Gessner* further observed that no other Ohio cases precluded applying R.C. 2744.09(B) when civil rights violations occur in the employment context. "In fact, suit appears to be routinely permitted against political subdivisions in such situations." Id. at ¶ 47.

Like our colleagues in *Gessner*, we are not persuaded that the legislature intended to engraft the Supreme Court's interpretation of the workers' compensation scheme onto its general statutory provisions for political-subdivision

immunity. Because employer intentional torts are not a natural risk of employment, the Supreme Court concluded that they occur outside of the employment relationship in the workers' compensation context. See *Blankenship v. Cincinnati Milacron Chem., Inc.* (1982), 69 Ohio St.2d 608, 613, 433 N.E.2d 572. * * *

We continue to believe claims that are causally connected to an individual's employment fit into the category of actions that are "relative to any matter that arises out of the employment relationship." * * * More recently, the Supreme Court of Ohio went so far as to summarily state that immunity is not available to a political subdivision in an employee's claim for unlawful discrimination. The court cited R.C. 2744.09(B) and (C). *Whitehall ex rel. Wolfe v. Ohio Civ. Rights Comm.* (1995), 74 Ohio St.3d 120, 123, 656 N.E.2d 684. And while *Wilson v. Stark Cty. Dept. of Human Services, * * *,* [70 Ohio St.3d 450, 639 N.E.2d 105,] does indeed indicate that R.C. 2744.02(B) has no exceptions to immunity for fraud and intentional infliction of emotional distress, that case involved a suit by a citizen who was not a public employee. Thus, R.C. 2744.09(B) was not applicable.

Because they are causally connected to Nagel's employment with the appellants, the retaliation and hostile-work-environment claims arise out of the employment relationship and in this case are based upon what Nagel asserts are violations of his civil rights. Therefore, his claims fall within the purview of R.C. 2744.09, which means that the statutory grant of immunity found in R.C. Chapter 2744 does not apply. Thus, we conclude that the trial court correctly decided that appellants are not entitled to summary judgment on these claims.

{¶ 66} Likewise, because Sampson's claims are causally connected to his employment and do not involve the workers' compensation context, the trial court correctly decided that appellants are not entitled to immunity on these claims.

STEWART, J., concurs.